## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| NANCY G. MALONEY, Derivatively on Behalf of FORTERRA, INC., | § § § | Civil Action No. : 3:18-cv-1980 |
| Plaintiff, | § § | |
| vs. | § § | |
| JEFFREY K. BRADLEY, W. MATTHEW BROWN, LORI M. BROWNE, WILLIAM KERFIN, KYLE S. VOLLUZ, KEVIN BARNER, ROBERT CORCORAN, SAMUEL D. LOUGHLIN, CLINT McDONNOUGH, JOHN McPHERSON, CHRIS MEYER, JACQUES SARRAZIN, CHADWICK S. SUSS and GRANT WILBECK, | § § § § § § § § § § | |
| Defendants, | § § | |
| – and – | § § | |
| FORTERRA, INC., a Delaware corporation, | § § | |
| Nominal Defendant. | § § § | __DEMAND FOR JURY TRIAL__ |

## VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT FOR BREACH OF FIDUCIARY DUTY, CONSTRUCTIVE FRAUD, CORPORATE WASTE AND UNJUST ENRICHMENT

## NATURE OF THE ACTION

1.      This is a shareholder derivative action brought on behalf of Forterra, Inc. ("Forterra" or the "Company") against certain members of its Board of Directors (the "Board") and certain of Forterra's current and former directors and senior executives (collectively, "defendants").  This action seeks to remedy defendants' breaches of fiduciary duty, constructive fraud, corporate waste and unjust enrichment.  This action arises out of a scheme and wrongful course of business that took place between March 2017 and August 2017 (the "Relevant Period"), whereby defendants caused Forterra to materially overstate its publicly reported financial results in violation of Generally Accepted Accounting Principles ("GAAP"); make other materially false and misleading statements and omissions; facilitate the false financial reporting by operating without effective internal controls; file false and misleading statements with the SEC; and permit certain of its current and former executives to profit from this misconduct by pegging the payment of their cash bonuses to falsely reporting otherwise unattainable quarterly and annual financial targets.

2.      Defendants' misconduct and self-dealing has wreaked or threatened to wreak hundreds of millions of dollars of damages on Forterra.  The Company's senior executives were incentivized to issue materially false and misleading financial reports and statements to justify paying themselves outsized cash bonuses.  As a result of defendants' misconduct, the Company has been sued by purchasers of its common stock seeking hundreds of millions of dollars in damages on a classwide basis for violations of the federal securities laws.  Forterra has also been named as a defendant in a whistleblower retaliation lawsuit brought by a former senior executive expressly accusing it of intentionally falsifying its financial reports, which will make the classwide securities claims harder for Forterra to defend.  The whistleblower also seeks, among other things, punitive damages.

- 1 -

3.     By authorizing and/or acquiescing in the accounting misstatements, defendants: (i) caused Forterra to issue materially false and misleading financial reports and to file materially false and misleading financial statements with the SEC during the Relevant Period; (ii) deprived Forterra's shareholder owners of their right to vote at the 2017 annual general meeting of shareholders ("AGM") based on accurate and complete reports of the Company's actual financial performance; (iii) exposed Forterra to hundreds of millions of dollars in potential liability to its investors, civil litigants and regulators, including the SEC; and (iv) caused Forterra to improperly pay an estimated more than $1 million in severance payments to a departing executive by permitting him to resign instead of being fired for cause and permitting him and other culpable executives to avoid being held to account for the potentially hundreds of millions of dollars in damages they caused.

4.     This action seeks recovery for Forterra against these faithless fiduciaries, as Forterra's Board is simply unable and/or unwilling to do so.

## JURISDICTION AND VENUE

5.     This Court has subject matter jurisdiction over this action under 28 U.S.C. §1332(a)(1) in that plaintiff and defendants are citizens of different states and the matter in controversy exceeds $75,000, exclusive of interest and costs.  This Court also has supplemental jurisdiction over all state law causes of action under 28 U.S.C. §1367.

6.     Venue is proper in this District under 28 U.S.C. §1391(b) because nominal party Forterra is headquartered in this District and thus a substantial portion of the transactions and wrongs complained of herein, including the defendants' primary participation in the wrongful acts detailed herein, occurred in this District.  Defendants Bradley, Brown, Browne, Volluz, Meyer, Corcoran, McDonnough, McPherson, Barner, Loughlin and Wilbeck each also reside in this District.

## PARTIES

**Plaintiff**

7.     Plaintiff Nancy G. Maloney is a shareholder of Forterra, who holds and has continuously held Forterra common stock since February 17, 2017.  Plaintiff is a citizen of Wisconsin.

**Nominal Party**

8.     Nominal party Forterra is a Delaware corporation headquartered at 511 East John Carpenter Freeway, 6th Floor, Irving, Texas.  Forterra is a citizen of Delaware and Texas.

**The "Officer Defendants"**

9.     Defendant Jeffrey K. Bradley ("Bradley") is, and has been since September 2015, the Chief Executive Officer ("CEO") of Forterra, and is, and has been since July 2016, a member of its Board.  Defendant Bradley is a citizen of Texas.

10.     Defendant W. Matthew Brown ("Brown") was, between April 2016 and September 6, 2017, when he was permitted to resign, an Executive Vice President, and between August 2015 and September 6, 2017, the Chief Financial Officer ("CFO") of Forterra.  Defendant Brown is a citizen of Texas.

11.     Defendant Lori M. Browne ("Browne") is, and has been since December 2017, an Executive Vice President and the General Counsel of Forterra.  From June 2016 through December 2017, defendant Browne served as Forterra's Senior Vice President and General Counsel, and from March 2015 to June 2016 she served as Forterra's Vice President and General Counsel.  Defendant Browne is a citizen of Texas.

12.     Defendant William Kerfin ("Kerfin") is, and has been since April 2016, the President of Forterra Water Pipe & Products.  Over the 13 months before his appointment as President of Forterra Water & Pipe Products, defendant Kerfin served as Vice President of Sales

for U.S. Pipe, which was acquired by Forterra on or about April 15, 2016. Defendant Kerfin is a citizen of Illinois.

**The "Director Defendants"**

13.     Defendant Kyle S. Volluz ("Volluz") is, and has been since June 21, 2016, a member of the Forterra Board. Defendant Volluz has also served as the managing director of Hudson Advisors L.P. (along with its related entities, "Hudson"), an affiliate of Forterra and Forterra's controlling shareholder, Lone Star Fund IX (U.S.), L.P. (along with its related entities, "Lone Star"), since January 2015. Defendant Volluz joined Hudson in 2009 and also served as a co-owner of LSF9 Cypress Parent 2 LLC. Defendant Volluz also served as a Senior Vice President and Director of Legal Services for Goldman Sachs Specialty Lending Group, an affiliate of Goldman, Sachs & Co., from 2005 to 2009. In such capacity, Volluz oversaw all legal issues impacting operating companies that are affiliates of Lone Star within North America, as well as other corporate investments for which Hudson provided asset management services in North America. In particular, defendant Volluz had been actively involved in the negotiation and closing of several Hudson lending transactions, acquisitions and asset sales since joining Hudson in 2009. Defendant Volluz is a citizen of Texas.

14.     Defendant Kevin Barner ("Barner") was, between October 2016 and his resignation in April 2018, a member of the Forterra Board. Defendant Barner has also served as a managing director of Lone Star North America Acquisitions LLC, an affiliate of Forterra and Lone Star, since December 2016 and had previously served as a director from June 2014 through December 2016 of Lone Star, where he focused on origination and underwriting activities related to corporate private equity and debt investments throughout the Americas. Prior to that, between August 2012 and June 2014, defendant Barner was a Vice President at Hudson, serving in an origination,

underwriting and asset management role on various operating company investments made by several of Lone Star's funds.  Defendant Barner is a citizen of Texas.

15.     Defendant Robert Corcoran ("Corcoran") is, and has been since October 2016, a member of the Forterra Board.  Defendant Corcoran also serves as a Senior Advisor – Global Operations for Hudson, a position he has held since January 2016.  Defendant Corcoran was formerly President and Chief Operating Officer of Hudson, a position he held from July 2014 to December 2015, and prior to that he served as President and CFO of Hudson.  Defendant Corcoran is a citizen of Texas.

16.     Defendant Samuel D. Loughlin ("Loughlin") was, between October 2016 and his resignation in July 2017, a member and the Chairman of the Forterra Board.  Defendant Loughlin also served as President of Lone Star North America Acquisitions, LLC, an affiliate of Forterra and Lone Star, where he was responsible for the management and oversight of all origination initiatives in North America. Previously, from 2011 to 2013, he served as managing director and senior managing director of Lone Star U.S. Acquisitions, LLC.  Defendant Loughlin joined Hudson in 2008, where he focused on directing the management of the corporate assets located in North America. From 2008 to 2011, he served in various capacities at Hudson, with responsibility for its retail and restaurant operating companies, in addition to leading teams in special originations initiatives.  Defendant Loughlin is a citizen of Texas.

17.     Defendant Clint McDonnough ("McDonnough") is, and has been since October 2016, a member of the Forterra Board.  Defendant McDonnough has also served as a member of Forterra's Advisory Board since July 1, 2015.  Before retiring in June 2015, defendant McDonnough was an audit partner at Ernst & Young LLP ("E&Y") for 38 years, most recently serving as the managing partner of the firm's Dallas office.  In his role as managing partner, defendant McDonnough was responsible for leading all day-to-day practice operations in one of

the firm's largest markets.  Prior to serving as managing partner of E&Y's Dallas office, defendant McDonnough was the firm's managing partner of Assurance & Advisory Business Services for the southwest area practice.  The Dallas office of E&Y is and has been Forterra's outside auditing firm since prior to its initial public offering ("IPO").  Defendant McDonnough is a citizen of Texas.

18.     Defendant John McPherson ("McPherson") is, and has been since October 2016, a member of the Forterra Board.  Between 1995 and October 2011, defendant McPherson worked with defendant Chris Meyer at McKinsey & Company, Inc. ("McKinsey"), a global management consulting firm, most recently serving as its senior partner from 2006 to 2011.  Defendant McPherson is a citizen of Texas.

19.     Defendant Chris Meyer ("Meyer") is, and has been since October 2016, a member of the Forterra Board, and since July 2017, Chairman of the Forterra Board.  Defendant Meyer has also served as a managing director of Hudson since February 2015.  In that capacity, defendant Meyer has oversight responsibility for a number of Lone Star's private equity investments, including Forterra, and also assists with the due diligence and underwriting of potential operating company investments.  Prior to joining Hudson in February 2015, defendant Meyer held a number of positions with McKinsey, most recently serving as a director (senior partner).  While at McKinsey, defendant Meyer managed the Dallas office, co-led the consumer practice group and co-founded McKinsey's consumer marketing analytics center.  Defendant Meyer is a citizen of Texas.

20.     Defendant Jacques Sarrazin ("Sarrazin") is, and has been since October 2016, a member of the Forterra Board.  Defendant Sarrazin resides in and is a citizen of France.

21.     Defendant Chadwick S. Suss ("Suss") was, between October 2016 and his resignation in April 2018, a member of the Forterra Board.  Defendant Suss had also served as a director of Hudson since July 2015 and prior to that, served as a Vice President starting in August

2013.  Suss's responsibilities at Hudson included identifying investment opportunities, managing acquisition processes, driving portfolio company performance and working on investment exits. Defendant Suss's asset management responsibilities included the building products and shipping businesses of Lone Star's operating companies.  Defendant Suss is a citizen of Illinois.

22.     Defendant Grant Wilbeck ("Wilbeck") was, between October 2016 and his resignation in April 2018, a member of the Forterra Board.  Defendant Wilbeck had also served as the senior managing director of Lone Star North America Acquisitions LLC, an affiliate of Forterra and Lone Star, where he served as a managing director from 2013 through December 2016. Defendant Wilbeck focused on origination and underwriting activities related to corporate private equity and debt investments. Previously, from 2007 to 2013, he served in various capacities at Hudson, with asset management responsibility across all retail and restaurant operating companies focusing on operational performance, capital structure and acquisition opportunities.  Defendant Wilbeck is a citizen of Texas.

23.     Defendants, and each of them, participated in the issuance and preparation of materially false and/or misleading statements by Forterra, including press releases and SEC filings. Because of defendants' positions with Forterra, they knew the adverse material non-public information about the business of Forterra, as well as its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and/or Board meetings and committees thereof, and via reports and other information provided to them in connection therewith.

**DEFENDANTS' FIDUCIARY DUTIES**

24.     Each officer and director of Forterra named herein owed Forterra the duty to exercise a high degree of care, loyalty and diligence in the management and administration of the

affairs of the Company, as well as in the use and preservation of its property and assets. The conduct of Forterra's directors and officers complained of herein involves knowing, intentional and culpable violations of their obligations as officers and directors of Forterra. Further, the misconduct of Forterra's officers has been ratified by Forterra's Board, which has failed to take any legal action on behalf of the Company against them.

25.     By reason of their positions as officers, directors and fiduciaries of Forterra and their ability to control the business and corporate affairs of the Company, defendants owed Forterra fiduciary obligations of candor, trust, loyalty and care, and were required to use their ability to control and manage Forterra in a fair, just, honest and equitable manner, and to act in furtherance of the best interests of Forterra and its shareholders so as to benefit all shareholders equally and not in furtherance of their personal interest or benefit. In addition, as officers and/or directors of a publicly held company, defendants had a duty to refrain from utilizing their control over Forterra to divert assets to themselves via improper and/or unlawful practices. Defendants also had a duty to promptly disseminate accurate and truthful information with respect to the Company's operations, earnings and compensation practices.

26.     Because of their positions of control and authority as directors and/or officers of Forterra, each of the defendants was able to and did, directly and/or indirectly, control the wrongful acts complained of herein. As to Forterra's directors, these acts include: (i) agreeing to and/or acquiescing in defendants' false financial reporting; (ii) permitting Forterra to operate with defective internal controls; and (iii) allowing certain defendants to unjustly enrich themselves to the detriment of the Company. Because of their positions with Forterra, each of the defendants was aware of these wrongful acts, had access to adverse non-public information and was required to disclose these facts promptly and accurately to Forterra shareholders and the financial markets, but failed to do so.

27.     To discharge their duties, the directors of Forterra were required to exercise reasonable and prudent supervision over the management, policies, practices and controls of the business and financial affairs of Forterra.  By virtue of such duties, the officers and directors of Forterra were required, among other things, to:

(a)     manage, conduct, supervise and direct the business affairs of Forterra in accordance with all applicable law (including federal and state laws, government rules and regulations and the charter and bylaws of Forterra);

(b)     neither engage in self-dealing nor knowingly permit any officer, director or employee of Forterra to engage in self-dealing;

(c)     neither violate nor knowingly permit any officer, director or employee of Forterra to violate applicable laws, rules and regulations;

(d)     remain informed as to the status of Forterra's operations, including its accounting practices, and upon receipt of notice or information of imprudent or unsound practices, to make a reasonable inquiry in connection therewith, and to take steps to correct such conditions or practices and make such disclosures as are necessary to comply with the U.S. federal securities laws and their duty of candor owed to the Company's shareholders;

(e)     prudently protect the Company's assets, including taking all necessary steps to recover corporate assets improperly paid to Company executives and directors together with the related costs and professional fees proximately caused by the unlawful conduct described herein;

(f)     establish and maintain systematic and accurate records and reports of the business and affairs of Forterra and procedures for the reporting of the business and affairs to the Board and to periodically investigate, or cause independent investigation to be made of, said reports and records;

(g)    maintain and implement an adequate, functioning system of internal legal, financial and accounting controls, such that Forterra's financial statements would be accurate and the actions of its directors would be in accordance with all applicable laws; and

(h)    supervise the preparation and filing of any financial reports or other information required by law from Forterra and to examine and evaluate any reports of examinations, audits or other financial information concerning the financial affairs of Forterra and to make full and accurate disclosure of all material facts concerning, *inter alia*, each of the subjects and duties set forth above.

28.    Each defendant, by virtue of his position as a director and/or officer, owed to the Company the fiduciary duties of loyalty and good faith and the exercise of due care and diligence in the management and administration of the affairs of the Company, as well as in the use and preservation of its property and assets.  The conduct of the defendants complained of herein involves a knowing and culpable violation of their obligations as directors and/or officers of Forterra, the absence of good faith on their part, and a reckless disregard for their duties to the Company and its shareholders, which defendants were aware or should have been aware posed a risk of serious injury to the Company.  The conduct of the defendants who were also officers and/or directors of the Company has been ratified by each of the Director Defendants who were members of Forterra's Board during the Relevant Period.

29.    Pursuant to Forterra's Code of Ethics and Business Conduct, defendants were each charged with "conduct[ing] Company business adhering to both the letter and the spirit of this Code and all applicable laws, rules, and regulations in all cities, states, and countries in which the Company operates."  The Code of Ethics and Business Conduct further charged defendants with causing all of Forterra's "public disclosures" to be accurate, stating in pertinent part as follows:

> Employees are responsible for the accurate and complete reporting of
> financial information within their respective areas of responsibility and for the

timely notification to the applicable supervisors and officers of significant transactions and the people involved, trends and other financial or non-financial information that may be material to the Company. Employees are also responsible for timely reports of other information not necessarily of a financial nature that could have a significant impact on the Company's business, financial condition or results of operations. Reports and documents that the Company files with or submits to the Securities and Exchange Commission (the "SEC") or the NASDAQ Global Select Market ("NASDAQ"), and other public communications, must contain full, fair, accurate, timely and understandable disclosure. If any employee becomes aware of any material misstatement or omission in the Company's filings or other public communications, the employee must contact the Designated Officer.

30.     The Code of Ethics and Business Conduct further charged Forterra's senior executives with maintaining accurate financial reports, stating in pertinent part as follows:

Senior financial officers are responsible for the accurate and reliable preparation and maintenance of the Company's financial records. Accurate and reliable preparation of financial records is critically important to proper management decisions and the fulfillment of the Company's financial, legal and reporting obligations. Diligence in accurately preparing and maintaining the Company's records allows the Company to fulfill its reporting obligations and provide stockholders, governmental authorities and the general public with full, fair, accurate, timely and understandable disclosure. Senior financial officers are responsible for establishing and maintaining adequate disclosure controls and procedures and internal controls and procedures, including procedures designed to accurately document and account for transactions on the Company's books and records, and for maintaining reports, vouchers, bills, invoices, payroll and service records, business measurement and performance records and other essential data with care and honesty.

31.     Moreover, Forterra's Principles of Corporate Governance also specifically charged each of the Director Defendants with "[a]ssessing the performance of the Chief Executive Officer (the 'CEO') and other senior management and setting their compensation"; "[o]verseeing the integrity of the Company's financial statements and the Company's financial reporting process"; "[o]verseeing the Company's processes for assessing and managing risk"; "[o]verseeing legal and regulatory compliance"; and "[p]roviding advice and counsel to management regarding significant issues facing the Company and reviewing and approving significant corporate actions."

32.     Defendants breached their duties of loyalty and good faith by allowing or by themselves causing the Company to misrepresent its financial results and prospects, as detailed

herein *infra*, and by failing to prevent the defendants from taking such illegal actions.  As a result, Forterra has expended and will continue to expend significant sums of money.  Such expenditures include, but are not limited to:

(a)      improvidently paid executive compensation and severance payments;

(b)      increased capital costs as a result of the loss of market capitalization and the Company's damaged reputation in the investment community;

(c)      costs incurred to carry out internal investigations, including legal fees paid to outside counsel; and

(d)      incurring possible civil lawsuit damages and/or SEC fines or penalties for improperly reporting overstated profits.

33.     These actions have irreparably damaged Forterra's corporate image and goodwill. For at least the foreseeable future, Forterra will suffer from what is known as the "liar's discount," a term applied to the stocks of companies who have been implicated in illegal behavior and have misled the investing public, such that Forterra's ability to raise equity capital or debt on favorable terms in the future is now impaired.

## SUBSTANTIVE ALLEGATIONS

**Forterra Is a "Controlled Company"**
**Despite Its Public Stock Listing**

34.     Forterra was previously known as Hanson Building Products, a Texas-based building materials manufacturing company.

35.     In March 2015, controlling shareholder Lone Star purchased the Company's predecessor from HeidelbergCement AG for $1.4 billion in a highly leveraged buyout.  Before selling the Company to Lone Star, HeidelbergCement AG had unsuccessfully attempted to conduct an IPO to raise capital to pay down the company's already high debt load.  Following the

acquisition by Lone Star, the acquired businesses that now make up Forterra were operated by LSF9 Concrete Holdings Ltd ("Concrete Holdings"), as a wholly owned subsidiary of Lone Star.

36. Lone Star is an investment advisory firm that owns multiple other industrial manufacturing companies, including Tote Systems (bulk container equipment, systems and services); Reliant Worldwide Plastics (injection-molded plastic commercial airplane seats); Concrete Related Products (fabricator of reinforcement bars used in concrete construction and concrete product manufacturing); Energy Steel Products, Inc. (stainless steel mill support for oil and gas, aerospace and other industries); Woodlawn Manufacturing (integrated manufacturer of metal parts for military ammunition and warheads); Continental Electronics (radio frequency transmitters); Alsay Incorporated (municipal and industrial water wells); Yellow Checker Cab Company of DFW (largest cab company in the Dallas-Fort Worth metroplex); Frac Tank Rentals (largest frac tank rental company in Permian Basin); Green Energy Oilfield Services (provider of fluid transportation, storage, disposal and other critical services, including frac tank rentals in Texas); State Service Company (which provides engineering, fabrication and construction services to the offshore oil and gas industry); RWI Construction (above-ground services to the oil and gas industry); Teton Buildings, LLC (remote workforce accommodations for the oil, gas and mining industries); Trinity Forge (closed-die forgings and machined parts); and Inter-American Oil Works (manufacturer of equipment for oil and gas drilling rigs).

37. In February 2016, Lone Star changed Concrete Holdings' name to Forterra.

38. Before taking Forterra public in an October 2016 IPO, Concrete Holdings distributed the Company's brick business in the United States and Eastern Canada to an affiliate of Lone Star (the "Brick Disposition"). Following the Brick Disposition and before Forterra's IPO, the remaining building products operations of Concrete Holdings in the United States and Eastern Canada were transferred to Forterra in an internal reorganization under common control

transaction (the "Reorganization").  Following the Reorganization, but before Forterra's IPO, Forterra was a wholly owned subsidiary of Forterra US Holdings, LLC, which was then indirectly wholly owned by Concrete Holdings.

39.     Forterra's only remaining operation at the start of the Relevant Period was a manufacturer of pipe and precast products in the United States and Eastern Canada for a variety of water-related infrastructure applications, including water transmission, distribution and drainage. The Company operated 96 manufacturing facilities located across North America that designed, manufactured and distributed products used in infrastructure projects serving both residential and non-residential markets.

40.     In April 2016, Lone Star took the former combined company's U.K. operations public as a separate company, Forterra UK, in which Lone Star retained majority ownership. Forterra has no relation with Forterra UK other than Lone Star's majority ownership of both companies.

41.     After acquiring the Company, Lone Star caused Forterra to make a series of acquisitions, including the following:

- USP in April 2015 for $775 million (operates in the water segment);

- Cretex Concrete Products, Inc. in October 2015 for $245 million (operates in the drainage segment);

- Sherman-Dixie Concrete Industries, Inc. in January 2016 for $67 million (operates in the drainage segment);

- Bio Clean Environmental Services, Inc. and Modular Wetland Systems, Inc. in August 2016 for $30 million (operates in the drainage segment);

- J&G Concrete Operations LLC in October 2016 for $32 million (operates in the drainage segment); and

- Precast Concepts LLC in October 2016 for $97.1 million (operates in the drainage segment).

42.     To make all of these acquisitions, controlling shareholder Lone Star loaded the Company up with even more debt before its IPO.  As of June 2016, Forterra had approximately $1.2 billion of long-term debt – more than triple the amount it had carried just 21 months before, when Lone Star acquired it from HeidelbergCement AG.

43.     Following the October 2016 IPO, controlling shareholder Lone Star continued to hold more than 70% of Forterra's common stock through a series of holding companies.  As such, defendants concede in Forterra's filing with the SEC that it is a "controlled company" within the meaning of Nasdaq corporate governance standards, and that:

> Accordingly, [Forterra] currently avail[s] [itself] of the 'controlled company' exception available under the Nasdaq rules which exempts [it] from certain corporate governance requirements, such as the requirements that a company have a majority of independent directors on its board of directors, that compensation of the executive officers be determined, or recommended to the board of directors for determination, by a majority of the independent directors or a compensation committee comprised solely of independent directors, and that director nominees be selected, or recommended for the board of directors' selection, by a majority of the independent directors or a nominations committee comprised solely of independent directors.

**Forterra's Materially Defective Reporting**
**Controls and False Financial Reporting**

44.     Forterra has two reporting segments, each responsible for approximately half of its revenues: Drainage Pipe and Water Pipe.  Drainage is driven by waste-water and storm-water infrastructure, highway infrastructure construction, and residential housing starts.  Water Pipe sales are driven by residential housing starts and public spending on water supply construction and municipal infrastructure.  By end market, Forterra has historically generated the largest portion of its revenue from U.S. residential markets (35%), followed by U.S. infrastructure (30%) and U.S. commercial (23%).  Approximately 9% of corporate revenues were generated outside of the United States (largely in Canada).

45.     Beginning in March 2017 and continuing through at least August 2017, defendants caused Forterra to operate with materially defective internal and reporting controls, which prevented the Company from being able to accurately calculate and report its financial results. Specifically, due to the material defects in Forterra's internal and reporting controls, beginning with the March 29, 2017 report of Forterra's fourth quarter and fiscal year 2016 ("4Q16" and "FY16") financial results, for the period ended December 31, 2016, defendants caused Forterra to overstate its earnings by violating GAAP.

46.     For instance, because many of the operating subsidiaries acquired by Lone Star were never effectively integrated into Forterra's corporate accounting system, during 4Q16 those subsidiaries continued ordering supplies from their historical vendors and Forterra's corporate accounting office in Irving was later forced to make up purchase orders after receiving vendor invoices months after they had been issued, which invoices continued stacking up at Forterra's corporate accounting office in Irving due to its personnel being overwhelmed.  As a result, when Forterra reported its 4Q16 and FY16 financial results in March 2017, it did not then have an accurate tally of all outstanding accounts payable.  Forterra employees often joked about the vendor invoices going unpaid, and it was common knowledge within the Company that invoices were going unpaid for months, sometimes resulting in contractors threatening Forterra with liens or disruptions in service due to unpaid invoices.

47.     In addition, faulty inventory accounting issues were resulting in discrepancies with regard to raw materials on hand at certain facilities, where the amount of raw materials shown on the books in Irving did not match what was actually on site.  The equipment at certain of Forterra's manufacturing facilities was also run down and had been neglected for too long, causing it to break down regularly, resulting in a lot of "waste" product being produced.  Forterra was also experiencing significant logistical problems delivering product to customers during FY16,

particularly in the U.S. Pipe division acquired in 2016. These production/waste problems frequently delayed projects and led to Forterra being "back-charged" by contractors for operational delays. Meanwhile, defendants' false financial reporting was camouflaging material ongoing declines in Forterra's organic sales during FY16 and that Forterra had actually been losing significant business in its important pipe and precast business during FY16 due in large part to operational problems at its production plants.

48. On March 29, 2017, defendants caused Forterra to issue a release reporting that the Company's 4Q16 net sales had "increased to $354.1 million" and that its gross margin had "expanded to 17.0%." Forterra also reported that its FY16 net sales had "increased to $1,364.0 million," its gross margin had "expanded to 20.6%," and that as a result, its net loss had "narrowed to $7.6 million." Purporting to explain how this had been accomplished and how Forterra then remained on track to achieve the outsized fiscal 2017 ("FY17") financial guidance being provided, the release stated that Forterra's 4Q16 "net sales increased by 80.4% to $354.1 million, compared to $196.3 million in the prior year quarter," with the "increase . . . attributable to the impact of acquisitions which increased net sales by $172.1 million," that "Drainage Pipe & Products net sales increased by 19.8% to $176.8 million, compared to $147.6 million in the prior year quarter, due to $31.4 million of net sales from acquisitions," and that "Water Pipe & Products net sales tripled to $177.3 million, compared to $48.1 million in the prior year quarter, due to net sales from [its] acquisitions of $140.7 million." It also stated that Forterra's FY16 net sales "increased to $1,364.0 million," adding that the "impact of acquisitions contributed $698.0 million to net sales," and that "Drainage Pipe & Products net sales increased to $728.9 million due to $222.1 million of net sales from acquisitions" and "Water Pipe & Products net sales increased to $632.6 million due to net sales from [its] acquisitions of $475.9 million."

49.     Despite the fact that these sales increases were due in large part to the revenue streams Lone Star had only recently acquired for Forterra, the March 29, 2017 release quoted defendant Bradley as stating that defendants were "'pleased with the significant accomplishments [Forterra] made in 2016 that laid the foundation for *further growth and margin expansion*,'" and that "'[a]ccretive acquisitions [had] expanded [the Company's] geographic scope, increased [its] market share in key growth regions, enhanced the breadth of [its] product offerings, added an innovative and fast-growing stormwater treatment product line and enhanced [its] position as a market leader in water and drainage infrastructure pipe and products.'"  It further quoted Bradley as stating that "'[t]he early results of [Forterra's] initiatives to drive margin expansion and lower costs [were] reflected in [its] results for the year,'" and that "'*Forterra [was then] better positioned . . . to benefit from a favorable outlook across all three of [its] end markets than any time in the past*.'"

50.     On March 31, 2017, defendants caused Forterra to file its FY16 annual report on Form 10-K with the SEC, which contained financial results similar to those reported in the March 29, 2017 release.  The FY16 Form 10-K was signed by defendants Bradley, Brown, Barner, Corcoran, Loughlin, McDonnough, McPherson, Meyer, Sarrazin, Suss, Volluz and Wilbeck.  As to the effectiveness of Forterra's then present internal and reporting controls, the FY16 Form 10-K conceded that Forterra's "disclosure controls and procedures were not effective at the reasonable assurance level as of December 31, 2016," but claimed that those control defects were limited to issues with inventory and bill and hold arrangements, stating in pertinent that management had identified a "[m]aterial weakness related to the aggregation of control deficiencies relating to inventory, including control deficiencies related to physical inventory counts, the evaluation of reserves for excess inventories, the periodic review of manufacturing labor and overhead variances, and standard cost procedures," and a "[m]aterial weakness related to control

deficiencies relating to bill and hold revenue transactions, including control deficiencies related to procedures to identify all bill and hold arrangements and sufficiently evaluate the accounting criteria prior to revenue recognition."  Defendants expressly maintained that despite the limited disclosure control defects disclosed, the 4Q16 and FY16 financial results Forterra had reported in the March 29, 2017 release and in the FY16 Form 10-K were accurate and complied with GAAP, stating in pertinent part as follows:

> In light of these material weaknesses, we performed additional analyses and other procedures to ensure that our consolidated financial statements included in this Annual Report on Form 10-K were prepared in accordance with US GAAP. These measures included, among other things, expansion of our year-end closing and consolidation procedures, and implementation of additional analytical reviews and verification procedures. As a result, we have concluded that the consolidated financial statements included in this Annual Report on Form 10-K present fairly, in all material respects, our financial position, results of operations and cash flows for the periods presented in conformity with U.S. GAAP.

51.     The 2016 Form 10-K was also certified as being complete and accurate by defendants Bradley and Brown pursuant to the Sarbanes-Oxley Act of 2002, with the relevant certifications stating in pertinent part as follows:

SECTION 302 CERTIFICATION

I, [Bradley/Brown], certify that:

1.      I have reviewed this annual report on Form 10-K of Forterra, Inc.;

2.      Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;

3.      Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report;

4.      The registrant's other certifying officer(s) and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) for the registrant and have:

(a)     Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;

(b)     Evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

(c)     Disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting; and

5.     The registrant's other certifying officer(s) and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's board of directors (or persons performing the equivalent functions):

(a)     All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and

(b)     Any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

52.     On April 28, 2017, defendants caused Forterra to mail a proxy statement incorporating the false and misleading FY16 Form 10-K to shareholders in connection with the Company's 2017 AGM, to be held in Irving, Texas on June 19, 2017.   At the 2017 AGM, shareholders would be asked, among other things, to elect four director nominees, ratify the appointment of E&Y again as Forterra's outside auditor for 2017, and "approve, on an advisory basis, the compensation of [its] named executive officers."   The four director nominees that shareholders would be asked to reelect were defendants Bradley, Corcoran, Barner and Suss.

**The Truth Begins to be Revealed**

53.     On May 8, 2017, defendants caused Forterra to announce that on May 3, 2017, Forterra's Executive Vice President and Chief Operating Officer, Scott Leonard, had resigned, without providing any explanation for the resignation.

54.     On May 15, 2017, defendants caused Forterra to issue a release reporting its first quarter 2017 ("1Q17") financial results for the interim period ended March 31, 2017.  According to the May 15, 2017 release, Forterra's 1Q17 "net sales increased to $338.3 million, compared to $187.0 million in the prior year quarter," with the "sales growth . . . attributable to the impact of acquisitions that increased net sales by $163.0 million."   Specifically, the release stated that "Drainage Pipe & Products ('Drainage') net sales improved to $160.4 million, compared to $144.3 million in the prior year quarter, due to $20.1 million of net sales from acquisitions," and that "Water Pipe & Products ('Water') net sales more than tripled to $177.8 million, compared to $40.5 million in the prior year quarter, due to net sales from [Forterra's] acquisition of U.S. Pipe of $142.9 million."

55.     Also on May 15, 2017, defendants caused Forterra to file its 1Q17 quarterly report on Form 10-Q with the SEC, which reported the same financial results disclosed in the May 15, 2017 release.  The 1Q17 Form 10-Q was signed and certified under the Sarbanes-Oxley Act of 2002 by defendants Bradley and Brown.  Once again the 1Q17 Form 10-Q stated that Forterra's "disclosure controls and procedures were not effective at the reasonable assurance level as of March 31, 2017 because of the" previously disclosed inventory and bill and hold "material weaknesses," though defendants now disclosed yet another "material weakness" in Forterra's internal and reporting controls.  Specifically, defendants now conceded that Forterra had a "material weakness related to the design and operating effectiveness of controls related to the accounting for cost accruals, including control deficiencies related to the Company's lack of timely

identification and processing of invoices during the financial statement close process to ensure cost accruals [were] complete," and that in "the current quarter, the Company identified and corrected prior period errors related to cost accrual items which should have been recognized in 2016," claiming "[t]hese errors were primarily caused by insufficient coordination and communication between the Company's plant and corporate office locations." Defendants disclosed that a "cumulative correction was recorded during the quarter ended March 31, 2017 which increased pretax loss by $4.6 million, of which $3.3 million increased cost of revenues and $2.0 million increased selling, general and administrative expenses, partially offset by a $0.7 million increase in revenues."

56.     On this news of the Company's declining financial performance in 1Q17, and *specifically that the Company had achieved no organic growth during the quarter*, and even though defendants had caused Forterra to once again contend that, despite the control defects disclosed, Forterra's 1Q17 financial results reported on May 15, 2017 were accurate and complied with GAAP, the price of Forterra common stock declined materially, falling more than 24% on unusually high trading volume.  According to a May 16, 2018 *SeekingAlpha.com* report, "RBC Capital downgrade[d] [Forterra] shares to Sector Perform from Outperform and lower[ed] its target price to $16 from $23, *saying management's credibility has been compromised and investors should move to the sidelines until [Forterra] can string together a few quarters of consistent financial performance*."

57.     On June 21, 2017, defendants caused Forterra to file a Current Report on Form 8-K with the SEC, signed by defendant Browne, disclosing that shareholders had reelected the directors running for reelection at the 2017 AGM.

58.     On July 31, 2017, defendants caused Forterra to file a Current Report on Form 8-K with the SEC, signed by defendant Browne, disclosing that on "July 27, 2017, Samuel D. Loughlin

resigned from his position as Chairman and a member of the Board of Directors . . . of Forterra . . . , concurrent with his decision to retire from his position at Lone Star," and that defendant Meyer had been appointed Chairman of the Board.

59.     On August 10, 2017, defendants caused Forterra to issue a release announcing its second quarter 2017 ("2Q17") financial results for the interim period ended June 30, 2017.  Once again the Company was forced to admit that it had produced *no organic growth*.  Instead, defendants stated that Forterra's net sales for 2Q17 "increased to $436.7 million, compared to $381.7 million in the prior year quarter," but that the sales growth was attributable to the impact of acquisitions that contributed $56.1 million to net sales.

60.     When defendants caused Forterra to file its 2Q17 quarterly report on Form 10-Q with the SEC that same day, the Company was forced to further disclose that its "disclosure controls and procedures were [still] not effective at the reasonable assurance level as of June 30, 2017 *because of the unremediated material weaknesses*" as to inventory, bill and hold and cost accruals.

61.     On this news, Forterra's stock price fell approximately 57% on August 10, 2017, again on unusually heavy trading volume.

**Significant Damage Suffered by Forterra
Due to Defendants' Misconduct**

62.     Beginning on August 14, 2017, several purchasers of Forterra common stock filed putative class action complaints in the U.S. District Court for the Eastern District of New York against a group of defendants that varied by complaint but included the Company, certain members of its senior management, its Board, its controlling shareholder Lone Star and certain of its affiliates, and certain banks that acted as underwriters of the Company's IPO.  These lawsuits were brought on behalf of all persons who purchased Forterra securities through August 14, 2017, generally alleging that statements made after the IPO by the Company and the defendants named

in the complaints contained false or misleading statements and/or omissions of material fact relating to: (i) the lack of growth from organic sales versus sales from acquisitions; (ii) increased pricing pressure on the Company's products; (iii) softness in the concrete and steel pressure pipe business; (iv) operational problems at plants, including problems relating to defective products; (v) unpaid invoices for products and services that resulted in understated expenses; and (vi) undisclosed material weaknesses in the Company's internal controls. These complaints seek tens of millions of dollars in damages, largely pursuant to §§10(b) and 20(a) of the Securities Exchange Act of 1934.[1]

63.     On September 7, 2017, defendants, without explanation or forewarning, disclosed that defendant Brown had resigned effective immediately on September 6, 2017. Defendants disclosed that the Board had determined to treat defendant Brown's resignation "as a resignation for good reason pursuant to his Amended and Restated Employment Agreement with Forterra Pipe & Precast LLC dated as of June 28, 2016," rather than a resignation "for cause," which would have deprived him of severance benefits. As a result of that determination by the Forterra Board (then comprising defendants Bradley, Barner, Corcoran, McDonnough, McPherson, Meyer, Sarrazin, Suss, Volluz and Wilbeck), defendant Brown received an estimated severance payment valued at more than $1 million, comprising a base salary continuation, a pro-rated 2017 annual bonus, health care coverage continuation, and other related benefits.

64.     On February 21, 2018, Raymond Vuoncino ("Vuoncino"), the former Vice President of Operations of U.S. Pipe Fabrication, filed a lawsuit alleging retaliation against him for "whistleblowing activities concerning [the] financial reporting practices" of Forterra. The

---

[1]     While the plaintiffs in the securities class actions also seek damages pursuant to the Securities Act of 1933 in connection with allegedly false statements contained in the registration statement used to conduct Forterra's October 2016 IPO, plaintiff herein only seeks damages for defendants' misconduct during the Relevant Period.

lawsuit was filed in the U.S. District Court for the District of New Jersey, alleging violations of the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010, 15 U.S.C. §78u-6 *et seq.*, and the Sarbanes-Oxley Act of 2002, 18 U.S.C. §1514A *et seq*. The lawsuit named as defendants Forterra, Bradley and Kerfin. *See Vuoncino v. Forterra, Inc., et al.*, No. 18-cv-02437 (Feb. 21, 2018 D.N.J.). Vuoncino, who previously worked at KPMG and Dow Jones and had "over twenty-five (25) years of experience in corporate finance," reported to defendant Kerfin at the time of his termination in retaliation for his whistleblowing activities. According to Vuoncino, in connection with calculating Forterra's 4Q16 and FY16 financial results reported on March 29, 2017, defendants caused Forterra to overstate U.S. Pipe's 4Q16 and FY16 reported profits by causing one Pipe and Precasting division to order product from another Pipe and Precasting division at the end of the quarter, paid for by an intradivision "rebate" that was not properly accounted for, to build excess inventory "just to report additional profits in order to meet" otherwise unattainable "projected and monthly quarterly" sales goals. Vuoncino further alleged that defendants had begun paying themselves cash bonuses on those falsified results "on a monthly basis with eighty percent (80%) of the bonus amount calculated on performance versus financial goals." In his action, Vuoncino seeks, among other things, compensatory, consequential, liquidated and punitive damages, and interest thereon from Forterra, Bradley and Kerfin.

65.     On March 7, 2018, defendants caused Forterra to file its FY17 annual report on Form 10-K with the SEC. In the FY17 Form 10-K, defendants disclosed that the Company's internal and reporting controls still contained material defects, including a "material weakness related to the aggregation of control deficiencies ***over the revenue recognition process***, primarily related to the ineffective design and operating effectiveness of controls over the verification of physical shipments and internal validation of customer approvals of sales order terms prior to recognizing revenue."

66.    On April 5, 2018, defendants caused Forterra to file a Current Report on Form 8-K with the SEC, signed by defendant Browne, disclosing that "[o]n March 31, 2018, Kevin Barner and Grant Wilbeck" and "[o]n April 3, 2018, Chadwick Suss" had "resigned from the Board," effective immediately, without any explanation for the resignations.   Defendants promptly replaced Barner, Suss and Wilbeck with three new directors, Richard "Chip" Cammerer, Jr. ("Cammerer") (who had also served as a managing director of Hudson since January 2016 and who also previously served as member of the board of directors of Forterra plc, a former affiliate of Forterra, between March 2016 and April 2017); Dominic LaValle ("LaValle") (who had also served as a managing director of Hudson since January 2018, had previously served as a director of Hudson from July 2015 through December 2017, and was then responsible for sourcing, executing and managing Hudson's private equity investments); and Chad Lewis ("Lewis") (who had also served as a Vice President of Hudson responsible for executing and managing Hudson's private equity investments since June 2015 and who previously served as an associate of Hudson from January 2015 to June 2015).

## DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

67.    Plaintiff brings this action derivatively in the right and for the benefit of Forterra to redress injuries suffered and to be suffered by Forterra as a direct result of defendants' violations of state and federal law, breaches of fiduciary duty, constructive fraud, corporate waste and unjust enrichment, as well as the aiding and abetting thereof by defendants.   This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

68.    Plaintiff will adequately and fairly represent the interests of Forterra and its shareholders in enforcing and prosecuting the Company's rights.

69.    Based upon the facts set forth throughout this complaint, applicable law and the longstanding rule that equity does not compel a useless and futile act, a pre-filing demand upon

the Forterra Board to institute this action against the Company's executive officers and members of the Forterra Board is excused as futile. A pre-filing demand on the Forterra Board, now comprising defendants Bradley, Volluz, Corcoran, McDonnough, McPherson, Meyer, Sarrazin, Cammerer, LaValle and Lewis, would be a useless and futile act because:

      (a)    Defendants concede that: (i) Forterra is controlled by Lone Star and its related entities, including Hudson, which collectively beneficially own more than 70% of Forterra's outstanding common stock; (ii) a majority of the ten current members of the Forterra Board are employed by Lone Star, including Meyer, Cammerer, Volluz, Corcoran, LaValle and Lewis; (iii) defendants Bradley, Brown, Corcoran, McDonnough, Meyer and Volluz collectively own significant equity in Lone Star; (iv) pursuant to Lone Star's Asset Advisory Agreement with Forterra, a loan to the bricks business spun off to an affiliate of Lone Star, Lone Star's Registration Right Agreement with Forterra, and Lone Star's Tax Receivable Agreement with Forterra, Lone Star has a material financial interest in Forterra; and (v) Forterra's 2018 Annual Proxy Statement concedes that "directors who . . . are employed by affiliates or related parties of Lone Star" are not independent, meaning that defendants Bradley, Corcoran, Meyer and Volluz cannot discharge their fiduciary duties to independently and disinterestedly investigate and prosecute the claims alleged herein.

      (b)    Forterra's 2018 Annual Proxy Statement also concedes that "directors who are members of [Forterra's] management," such as defendant Bradley, are not independent due to their executive positions with the Company and their relationships with and dependence upon the other members of the Board for their livelihood. Thus, defendant Bradley cannot discharge his fiduciary duty to independently and disinterestedly investigate and prosecute the claims alleged herein.

(c)     By virtue of the fact that in addition to serving on the Forterra Board, Lewis and LaValle serve together on the Foundation Building Materials Inc. Board of Directors and defendants McPherson and Meyer previously worked together at McKinsey, they too are not independent, respectively, from each other, and thus cannot discharge their fiduciary duties to independently and disinterestedly investigate and prosecute the claims alleged herein.

(d)     By virtue of the fact that in addition to being a member of the Forterra Board, defendant McDonnough is the retired managing partner of E&Y's Dallas office, which served as Forterra's outside audit firm prior to its IPO and throughout the Relevant Period, and continues to serve as Forterra's outside audit firm despite defendants' repeated admissions of material internal control defects, the serious intentional financial falsification and whistleblower retaliation charges alleged by Vuoncino in the whistleblower retaliation action, and the fact that Forterra has now been sued for issuing false and misleading financial statements throughout its entire history as a publicly traded company in a securities class action seeking tens of millions of dollars in damages, defendant McDonnough is not independent, as defendant McDonnough could not discharge his fiduciary duty to independently and disinterestedly investigate and prosecute the claims alleged herein that potentially implicate his former partners upon whom he still relies to fund his retirement.

(e)     By virtue of the fact that defendants McDonnough (Chair) and McPherson were members of the Board's Audit Committee during the Relevant Period, which committee was charged with "represent[ing] the Board of Directors in discharging its responsibilities relating to the Company's accounting, financial reporting, financial practices and system of internal controls," and "[a]s part of its oversight role, the Audit Committee . . . reviewed and discussed with Company's management the Company's audited consolidated financial statements included in [Forterra's] 2017 Form 10-K," defendants McDonnough and McPherson are directly complicit

in and potentially liable for the misconduct alleged herein and would not be disinterested in the outcome of an investigation into these claims.

(f)     By virtue of the fact that defendants Meyer (Chair) and McPherson were members of the Board's Compensation Committee, which, despite being charged under the terms of the committee's charter with "reviewing and approving corporate goals and objectives relevant to the compensation of [Forterra's] executive officers in light of those goals and objectives, and setting compensation for [those] officers based on those evaluations," mischaracterized defendant Brown's termination as a "resignation for good reason" pursuant to his Amended and Restated Employment Agreement, thereby facilitating his walking away with more than an estimated $1 million in severance payments rather than being called upon to indemnify Forterra for the misconduct he caused the Company to undertake, defendants Meyer and McPherson are directly complicit in and potentially liable for the misconduct alleged herein and would not be disinterested in the outcome of an investigation into these claims.

(g)     The members of Forterra's entire Board have demonstrated their unwillingness and/or inability to act in compliance with their fiduciary obligations and/or to sue themselves and/or their fellow directors and allies in the top ranks of the corporation for the violations of law complained of herein.   These are people with whom they have developed professional relationships, who are their friends and with whom they have entangling financial alliances, interests and dependencies, and therefore, they are not able to and will not vigorously prosecute any such action.  For instance, prior to filing his whistleblower retaliation lawsuit, on June 6, 2017, Vuoncino filed a complaint with the U.S. Department of Labor, Occupational Safety and Health Administration, which Forterra received notice of, alleging that he had "engaged in protected activity, of which Forterra had knowledge, he was terminated by [Forterra and defendants Bradley and Kerfin] as a result of his protected activity and it was a determinative

factor in his firing." Rather than investigating Vuoncino's claims and taking action, or reporting them to the SEC and Forterra's shareholder owners, the Board did nothing, prompting the filing of Vuoncino's federal action. The Company is now potentially exposed to tens of millions of dollars in the whistleblower retaliation action and in the securities class action.

(h)     The Forterra Board and the Company's senior management participated in, approved and/or permitted the wrongs alleged herein to have occurred and participated in efforts to conceal or disguise those wrongs from Forterra's stockholders, or recklessly and/or negligently disregarded the wrongs complained of herein, and are therefore not disinterested parties. As a result of their access to and review of internal corporate documents or conversations and connections with other corporate officers, employees and directors and attendance at management and/or Board meetings, each of the defendants knew the adverse non-public information regarding the false financial reporting and the failure to pursue remedies against defendant Brown and instead deem his separation a "resignation for good reason" in order to pay him an estimated more than $1 million in improper severance payments. Under their specific duties as Board members, the Director Defendants are charged with the management of the Company and to conduct its business affairs. Defendants breached the fiduciary duties that they owed to Forterra and its shareholders in that they failed to prevent and correct the false financial reporting and failed to pursue remedies against defendant Brown and instead deemed his separation a "resignation for good reason" in order to pay him an estimated more than $1 million in improper severance payments. Certain directors are also dominated and controlled by Lone Star and other directors and cannot act independently of them. Thus, the Forterra Board cannot exercise independent objective judgment in deciding whether to bring this action or whether to vigorously prosecute this action because each of its members participated personally in the wrongdoing or are dependent upon other defendants who did.

(i)      The acts complained of constitute violations of the fiduciary duties owed by Forterra's officers and directors and these acts are incapable of ratification.

(j)      The members of Forterra's Board have benefited, and will continue to benefit, from the wrongdoing herein alleged and have engaged in such conduct to preserve their positions of control and the perquisites derived thereof, and are incapable of exercising independent objective judgment in deciding whether to bring this action.  Indeed, in addition to the directors who defendants concede are not independent due to their ties to Lone Star, defendants McDonnough, McPherson and Sarrazin, who defendants claim are "independent" without demonstrating why in the Company's 2018 Annual Proxy Statement, received $142,688, $138,014 and $123,340, respectively, in director's fees.

(k)      Any suit by the current directors of Forterra to remedy these wrongs would likely further expose the liability of certain defendants under the federal securities laws, which could result in additional civil and/or criminal actions being filed against one or more of these defendants, thus, they are hopelessly conflicted in making any supposedly independent determination whether to sue themselves.

(l)      Forterra has been and will continue to be exposed to significant losses due to the wrongdoing complained of herein, yet the current Board has not filed any lawsuits against itself or others – including defendants Brown and Kerfin – who were responsible for the wrongful conduct alleged herein to attempt to recover for Forterra any part of the damages Forterra suffered and will suffer thereby.

(m)      In order to properly prosecute this lawsuit, it would be necessary for the directors to sue themselves and the other defendants, requiring them to expose themselves and their comrades to millions of dollars in potential civil liability and criminal or SEC sanctions.  This they will not do.  Specifically, defendants Bradley, Barner, Brown, Browne, Volluz, Corcoran,

Loughlin, McDonnough, McPherson, Meyer, Sarrazin, Suss and Wilbeck are all named as defendants in the securities fraud class action detailed above in ¶62, with each being charged with violations of §§10(b) and 20(a) of the Securities Exchange Act of 1934 and SEC Rule 10b-5.

(n)     Forterra's current and past officers and directors are protected against personal liability for their acts of mismanagement, corporate waste and breach of fiduciary duties alleged in this complaint by directors' and officers' liability insurance they caused the Company to purchase for their protection with corporate funds, *i.e.*, monies belonging to the stockholders of Forterra.  However, due to certain changes in the language of directors' and officers' liability insurance policies in the past few years, the directors' and officers' liability insurance policies covering defendants in this case contain provisions which eliminate coverage for any action brought directly by Forterra against these defendants, known as, *inter alia*, the "insured versus insured exclusion."  As a result, if these directors were to sue themselves or certain officers of Forterra, there would be no directors' and officers' insurance protection and thus, this is a further reason why they will not bring such a suit.  On the other hand, if the suit is brought derivatively, as this action is brought, such insurance coverage exists and will provide a basis for the Company to effectuate a recovery.

(o)     To bring this action for breaching their fiduciary duties, the members of the Forterra Board would have been required to sue themselves and/or their fellow directors and allies in the top ranks of the Company, who are their personal friends and with whom they have entangling financial alliances, interests and dependencies, including all defendants affiliated with controlling shareholder Lone Star, which they would not do.

70.     Plaintiff has not made any demand on the shareholders of Forterra to institute this action since such demand would be a futile and useless act for the following reasons:

(a)     Forterra is a publicly traded company with more than 64 million shares issued and outstanding, and hundreds or thousands of shareholders;

(b)     making demand on such a large number of shareholders would be impossible for plaintiff who has no way of finding out the names, addresses or phone numbers of shareholders; and

(c)     making demand on all shareholders would force plaintiff to incur huge expenses, assuming all shareholders could be individually identified.

## COUNT I

### For Breach of Fiduciary Duties and/or Aiding and Abetting
### Against All Defendants

71.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

72.    Each of the defendants agreed to and did participate with the other defendants and/or aided and abetted one another in a deliberate course of action designed to divert corporate assets in breach of the fiduciary duties the defendants owed to the Company.

73.    The defendants have violated fiduciary duties of care, loyalty, candor and independence owed to Forterra, have engaged in unlawful self-dealing and have acted to put their personal interests and/or their related entities' and colleagues' interests ahead of the interests of Forterra and its shareholders.

74.    As demonstrated by the allegations above, defendants failed to exercise the care required and breached their duties of loyalty, good faith, candor and independence owed to Forterra and its public shareholders, and they have failed to disclose material information and/or made material misrepresentations to shareholders regarding Forterra's falsified financial reporting during the Relevant Period.

75.     By reason of the foregoing acts, practices and course of conduct, the defendants have failed to exercise ordinary care and diligence in the exercise of their fiduciary obligations toward Forterra and its public shareholders.

76.     As a proximate result of defendants' conduct, in concert with the other defendants, Forterra has been injured and is entitled to damages.

## COUNT II

### For Constructive Fraud Against All Defendants

77.     Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

78.     As corporate fiduciaries, defendants owed to Forterra and its shareholders a duty of candor and full and accurate disclosure regarding the true state of Forterra's business and assets and their conduct with regard thereto.

79.     As a result of the conduct complained of, defendants made, or aided and abetted the making of, numerous misrepresentations to and/or concealed material facts from Forterra's shareholders despite their duties to, *inter alia*, disclose the true facts regarding their stewardship of Forterra.  Thus, they have committed constructive fraud and violated their duty of candor.

80.     By reason of the foregoing, Forterra has been damaged.

## COUNT III

### For Corporate Waste Against All Defendants

81.     Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

82.     By failing to properly consider the interests of the Company and its public shareholders, by failing to conduct proper supervision, and by giving away more than $1 million to defendant Brown via his severance payments and failing to seek indemnity from him or any

other Officer Defendant for the harm they caused Forterra, defendants have caused Forterra to waste valuable corporate assets.

83.     As a result of defendants' corporate waste, they are liable to the Company.

## COUNT IV

### For Unjust Enrichment Against the Officer Defendants

84.     Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

85.     As a result of the conduct described above, all of the Officer Defendants were unjustly enriched at the expense of Forterra in terms of the cash bonuses they received for improperly overstating Forterra's FY16 financial results and for not being called upon to account for their misconduct at Forterra that has exposed the Company to tens of millions of dollars in potential liability.  These defendants should be required to disgorge the gains that they have and/or will otherwise unjustly obtain at the expense of Forterra.  A constructive trust for the benefit of the Company should be imposed thereon.

86.     Defendant Brown also obtained an estimated more than $1 million in severance benefits that were not earned or justified but were instead paid as part of a scheme to cover up defendants' complicity in the aforesaid conduct.   A constructive trust for the benefit of the Company should be imposed thereon.

87.     All the cash bonuses paid and severance payments provided to these defendants were at the expense of Forterra.  The Company received no benefit from these payments and Forterra was seriously damaged by such payments.

### PRAYER FOR RELIEF

WHEREFORE, plaintiff demands judgment as follows:

A.      Awarding money damages against all defendants, jointly and severally, for all losses and damages suffered as a result of the acts and transactions complained of herein, together with pre-judgment interest, to ensure defendants do not participate therein or benefit thereby;

B.      Directing all defendants to account for all damages caused by them, as well as all profits and special benefits and unjust enrichment they have obtained as a result of their unlawful conduct, including all severance payments and payments of cash bonuses, and imposing a constructive trust thereon;

C.      Directing Forterra to take all necessary actions to reform and improve its corporate governance and internal control procedures to comply with applicable law, including, but not limited to, putting forward for a shareholder vote resolutions for amendments to the Company's By-Laws or Articles of Incorporation and taking such other action as may be necessary to place before shareholders for a vote the adoption of the following Corporate Governance policies:

(i)      reforming Forterra's executive compensation program, including placing a ban on paying cash bonuses in monthly installments before the Company's financial statements have been finalized and audited;

(ii)     appropriately testing and then strengthening the internal audit and control function;

(iii)    a proposal to strengthen the Forterra Board's supervision of operations and develop and implement procedures for greater shareholder input into the policies and guidelines of the Board;

(iv)     enhancing the Board's independence standards by banning affiliates of any controlling shareholder from serving as board members; and

(v)      terminating E&Y as Forterra's outside auditor and rotating independent auditing firms every five years.

D.      Ordering the imposition of a constructive trust over defendants' improper severance payments and other cash bonuses;

E.      Awarding punitive damages;

F.      Awarding the costs and disbursements of this action, including reasonable attorneys', accountants', and experts' fees; and

G.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED:  July 31, 2018                          BALON B. BRADLEY LAW FIRM
                                               BALON B. BRADLEY (Texas Bar No. 02821700)


                                               _/s/Balon B. Bradley_
                                               BALON B. BRADLEY

                                               5473 Blair Road, Suite 100
                                               Dallas, TX  75231
                                               Telephone:  972/991-1582
                                               972/755-0424 (fax)
                                               balon@bbradleylaw.com

                                               ROBBINS GELLER RUDMAN & DOWD LLP
                                               SAMUEL H. RUDMAN
                                               MARY K. BLASY
                                               58 South Service Road, Suite 200
                                               Melville, NY 11747
                                               Telephone:  631/367-7100
                                               631/367-1173 (fax)
                                               srudman@rgrdlaw.com
                                               mblasy@rgrdlaw.com

                                               LAW OFFICES OF CURTIS V. TRINKO, LLP
                                               CURTIS V. TRINKO
                                               16 West 46th Street, 7th Floor
                                               New York, NY  10036
                                               Telephone:  212/490-9550
                                               212/986-0158 (fax)
                                               ctrinko@trinko.com

LAW OFFICES OF KENNETH A. ELAN
KENNETH A. ELAN
217 Broadway, Suite 603
New York, NY  10007
Telephone:  212/962-1224
212/271-4230 (fax)

*Attorneys for Plaintiff*

JS 44 (Rev. 06/17) - TXND (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

NANCY G. MALONEY, Derivatively on Behalf of FORTERRA, INC.

## DEFENDANTS

SEE ATTACHED LIST

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant _____
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
SEE ATTACHED LIST

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1  U.S. Government Plaintiff
- ☒ 3  Federal Question *(U.S. Government Not a Party)*
- ☐ 2  U.S. Government Defendant
- ☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 862 Black Lung (923) | ☒ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | | | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1  Original Proceeding
- ☐ 2  Removed from State Court
- ☐ 3  Remanded from Appellate Court
- ☐ 4  Reinstated or Reopened
- ☐ 5  Transferred from Another District *(specify)*
- ☐ 6  Multidistrict Litigation - Transfer
- ☐ 8  Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Violation of the Securities Exchange Act

Brief description of cause:

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $ _____

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*   JUDGE  Kinkeade   DOCKET NUMBER  3:18-cv-01957-K

DATE  07/31/2018

SIGNATURE OF ATTORNEY OF RECORD  /s/ Balon B. Bradley

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

## ATTACHMENT TO CIVIL COVER SHEET

I. (a) DEFENDANTS

FORTERRA, INC.
JEFFREY K. BRADLEY
W. MATTHEW BROWN
LORI M. BROWNE
WILLIAM KERFIN
KYLE S. VOLLUZ
KEVIN BARNER
ROBERT CORCORAN
SAMUEL D. LOUGHLIN
CLINT McDONNOUGH
JOHN McPHERSON
CHRIS MEYER
JACQUES SARRAZIN
CHADWICK S. SUSS
GRANT WILBECK

I. (c) PLAINTIFF'S ATTORNEYS

BALON B. BRADLEY LAW FIRM
Balon B. Bradley
5473 Blair Road, Suite 100
Dallas, TX  75231
Telephone:  972/991-1582
972/755-0424 (fax)
balon@bbradleylaw.com

ROBBINS GELLER RUDMAN & DOWD LLP
SAMUEL H. RUDMAN
MARY K. BLASY
58 South Service Road, Suite 200
Melville, NY 11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
mblasy@rgrdlaw.com

LAW OFFICES OF CURTIS V. TRINKO, LLP
CURTIS V. TRINKO
16 West 46th Street, 7th Floor
New York, NY  10036
Telephone:  212/490-9550
212/986-0158 (fax)
ctrinko@trinko.com

LAW OFFICES OF KENNETH A. ELAN
KENNETH A. ELAN
217 Broadway, Suite 603
New York, NY  10007
Telephone:  212/962-1224
212/271-4230 (fax)