# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| NANCY G. MALONEY, Derivatively on Behalf of FORTERRA, INC., | § § § | Civil Action No. : 3:18-cv-1980 |
| Plaintiff, | § § | |
| vs. | § § § | |
| JEFFREY K. BRADLEY, W. MATTHEW BROWN, LORI M. BROWNE, WILLIAM KERFIN, KYLE S. VOLLUZ, KEVIN BARNER, ROBERT CORCORAN, SAMUEL D. LOUGHLIN, CLINT McDONNOUGH, JOHN McPHERSON, CHRIS MEYER, JACQUES SARRAZIN, CHADWICK S. SUSS and GRANT WILBECK, | § § § § § § § § § § § § | |
| Defendants, | § § § | |
| – and – | § § | |
| FORTERRA, INC., a Delaware corporation, | § § | |
| Nominal Defendant. | § § | |

## DEFENDANTS' MOTION TO DISMISS FOR FORUM NON CONVENIENS, FAILURE TO MAKE A PRE-SUIT DEMAND PURSUANT TO RULE 23.1, AND FAILURE TO STATE A CLAIM PURSUANT TO RULE 12(B)(6)

**SIDLEY AUSTIN LLP**
Yvette Ostolaza
Angela C. Zambrano
Yolanda C. Garcia
2021 McKinney Avenue, Suite 2000
Dallas, Texas 75201
Telephone:     (214) 981-3300
Facsimile:     (214) 981-3400

*Attorneys for Nominal Defendant Forterra, Inc., and Individual Defendants Jeffrey Bradley, Lori M. Browne, Kyle S. Volluz, Kevin Barner, Robert Corcoran, Samuel D. Loughlin, Clint McDonnough, John McPherson, Chris Meyer, Chadwick Suss, and Grant Wilbeck*

**AKIN GUMP STRAUSS HAUER & FELD LLP**
M. Scott Barnard
Michelle A. Reed
Daniel S. Park
1700 Pacific Ave., Suite 4100
Dallas, Texas 75201-4618
Telephone: (214) 969-2800
Facsimile: (214) 969-4343

*Attorneys for William Matthew Brown*

## TABLE OF CONTENTS

I.     Preliminary Statement....................................................................................................1

II.    Relevant Factual Background .......................................................................................3

       A.    Forterra, Inc.......................................................................................................3

       B.    The IPO And Articles Of Incorporation ..........................................................4

       C.    Plaintiff's Derivative Complaint.......................................................................4

III.   Arguments And Authorities...........................................................................................5

       A.    Plaintiff's Claims Are Subject To A Mandatory And Enforceable Forum-
             Selection Clause And Should Be Dismissed Under The Doctrine Of *Forum Non
             Conveniens*........................................................................................................5

             1.    Legal Standard .......................................................................................5

             2.    This Lawsuit Falls Within The Scope Of The Certificate's Mandatory And
                   Enforceable Forum-Selection Clause ........................................................6

       B.    The Complaint Fails To Establish Demand Futility Or To State A Claim..............8

             1.    Delaware Law Governs the Demand Futility Question...............................9

             2.    The Complaint Fails To Establish Demand Futility ...................................9

             3.    Alleged Connections To Lone Star Are Immaterial To The Futility
                   Analysis................................................................................................12

             4.    Plaintiff Fails To Plead Particularized Factual Allegations That Members
                   Of The Demand Board Face A Substantial Likelihood Of Liability.........14

                   a.    Plaintiff Fails To Establish A Substantial Likelihood Of Liability
                         Based On Alleged Breach Of Fiduciary Duty ..............................16

                   b.    Plaintiff's Waste Claim Does Not Establish Demand Futility.......18

             5.    Conclusory Allegations That Directors Have Personal or Business
                   Relationships Are Insufficient To Excuse Demand...................................20

             6.    Director By Director Analysis .................................................................21

                   a.    Jacques Sarrazin....................................................................21

                   b.    John McPherson.....................................................................22

                   c.    Robert Corcoran....................................................................23

        d.      Richard Cammerer, Jr ....................................................................23

        e.      Kyle Volluz........................................................................................23

        f.      Dominic LaValle.............................................................................23

        g.      Chad Lewis .......................................................................................24

        h.      Chris Meyer ......................................................................................24

        i.      Clint McDonnough .........................................................................24

        j.      Jeffrey Bradley.................................................................................25

IV.     Conclusion ....................................................................................................25

## TABLE OF AUTHORITIES

**Page(s)**

### Cases

*In re 3COM Corp. S'holders Litig.*,
   No. C.A. 16721, 1999 WL 1009210 (Del. Ch. Oct. 25, 1999)................................................20

*In re Affiliated Comput. Servs., Inc. S'holders Litig.*,
   CIV.A. 2821-VCL, 2009 WL 296078 (Del. Ch. Feb. 6, 2009) ........................................12, 13

*Annuity v. Smith*,
   No. CV 11000-VCG, 2017 WL 1382597 (Del. Ch. Apr. 18, 2017)........................................24

*Aronson v. Lewis*,
   473 A.2d 805 (Del. 1984) ........................................................................................9, 11, 15

*Atl. Marine Constr. Co. v. United States Dist. Court for W. Dist. of Tex.*,
   571 U.S. 49 (2013)............................................................................................... *passim*

*Aztec Oil & Gas, Inc. v. Fisher*,
   152 F. Supp. 3d 832 (S.D. Tex. 2016) ....................................................................................9

*Brehm v. Eisner*,
   746 A.2d 244 (Del. 2000) ....................................................................................... *passim*

*In re Caremark Int'l Inc. Derivative Litig.*,
   698 A.2d 959 (Del. Ch. 1996)...............................................................................................18

*Chen v. Howard-Anderson*,
   87 A.3d 648 (Del. Ch. 2014)................................................................................................13

*In re Citigroup Inc. S'holder Derivative Litig.*,
   964 A.2d 106 (Del. Ch. 2009)...............................................................................................17

*City of Miami Gen. Emps. v. Comstock*,
   No. CV 9980-CB, 2016 WL 4464156 (Del. Ch. Aug. 24, 2016),
   *aff'd on other grounds*, 158 A.3d 885 (Del. 2017) ................................................................14

*City of Providence v. First Citizens BancShares, Inc.*,
   99 A.3d 229 (Del. Ch. 2014)........................................................................................1, 2, 6, 8

*Continuing Creditors' Comm. of Star Telecomm., Inc. v. Edgecomb*,
   385 F. Supp. 2d 449 (D. Del. 2004)......................................................................................12

*In re Crimson Exploration Inc. Stockholder Litig.*,
   No. 8541-VCP, 2014 WL 5449419 (Del. Ch. Oct. 24, 2014) ................................................13

*Desimone v. Barrows*,
   924 A.2d 908 (Del. Ch. 2007).................................................................................11

*In re Dow Chem. Co. Derivative Litig.*,
   No. CIV.A. 4349-CC, 2010 WL 66769 (Del. Ch. Jan. 11, 2010)..........................21

*Ellis v. Gonzalez*,
   No. CV 2017-0342-SG, 2018 WL 3360816 (Del. Ch. July 10, 2018) ...................21

*In re Gen. Motors Co. Derivative Litig.*,
   CV 9627-VCG, 2015 WL 3958724 (Del. Ch. June 26, 2015),
   *aff'd*, 133 A.3d 971 (Del. 2016).............................................................................18

*In re Goldman Sachs Grp., Inc. S'holder Litig.*,
   No. 5215-VCG, 2011 WL 4826104 (Del. Ch. Oct. 12, 2011)..........................15, 16

*Haynsworth v. The Corp.*,
   121 F.3d 956 (5th Cir. 1997) ...................................................................................7

*Higher Educ. Mgmt. Group, Inc. v. Mathews*,
   CIV.A. 9110-VCP, 2014 WL 5573325 (Del. Ch. Nov. 3, 2014) ..........................16

*Huff Energy Fund, L.P. v. Gershen*,
   No. CV 11116-VCS, 2016 WL 5462958 (Del. Ch. Sept. 29, 2016) ......................20

*Kamen v. Kemper Fin. Servs., Inc.*,
   500 U.S. 90 (1991)................................................................................................2, 9

*Butorin ex rel. KBR Inc. v. Blount*,
   106 F. Supp. 3d 833 (S.D. Tex. 2015) ..................................................................6, 8

*King v. Baldino*,
   648 F. Supp. 2d 609 (D. Del. 2009),
   *aff'd*, 409 F. App'x 535 (3d Cir. 2010)..............................................................10, 22

*Lambrecht v. O'Neal*,
   3 A.3d 277 (Del. 2010) ............................................................................................5

*Lenois v. Lawal*,
   CV 11963-VCMR, 2017 WL 5289611 (Del. Ch. Nov. 7, 2017).....................11, 15

*Billard ex rel. Liquidity Servs., Inc. v. Angrick*,
   220 F. Supp. 3d 132 (D.D.C. 2016) .........................................................................8

*Livermore v. Engles*,
   3-10-CV-0882-BD, 2010 WL 3583999 (N.D. Tex. Sept. 13, 2010) ......................17

*Malone v. Brincat*,
   722 A.2d 5 (Del. 1998) ...........................................................................................17

*Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart*,
845 A.2d 1040 (Del. 2004) ...................................................................10, 11, 12, 21

*Midwestern Teamsters Pension Tr. Fund v. Baker Hughes Inc.*,
CIV.A H-08-1809, 2009 WL 6799492 (S.D. Tex. May 7, 2009)............................21

*In re Morton's Rest. Grp., Inc. S'holder Litig.*,
74 A.3d 656 (Del. Ch. 2013)................................................................................13

*Ogden v. Bryant*,
CV H-15-0139, 2015 WL 7717127 (S.D. Tex. Nov. 25, 2015) ............................18

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Raines*,
534 F.3d 779 (D.C. Cir. 2008) ............................................................................10

*In re Plains All Am. Derivative Litig.*,
No. H-15-3632, 2016 WL 6634929 (S.D. Tex. Nov. 8, 2016)...............................7

*Postorivo v. AG Paintball Holdings, Inc.*,
Nos. CIV.A. 2991-VCP, CIV.A. 3111-VCP, 2008 WL 553205
(Del. Ch. Feb. 29, 2008) ...................................................................................12

*Rales v. Blasband*,
634 A.2d 927 (Del. 1993) ...................................................................................11

*Ryan v. Gursahaney*,
No. 9992-VCP, 2015 WL 1915911 (Del. Ch. Apr. 28, 2015),
*aff'd*, 128 A.3d 991 (Del. 2015).........................................................................22

*Seminaris v. Landa*,
662 A.2d 1350 (Del. Ch. 1995).....................................................................11, 22

*South v. Baker*,
62 A.3d 1 (Del. Ch. 2012)..................................................................................22

*Stone ex rel. AmSouth Bancorporation v. Ritter*,
911 A.2d 362 (Del. 2006) ..............................................................................10, 18

*Teamsters Union 25 Health Servs. & Ins. Plan v. Baiera*,
119 A.3d 44 (Del. Ch. 2015).............................................................................11

*In re Wayport, Inc. Litig.*,
76 A.3d 296 (Del. Ch. 2013)..............................................................................16

*Weber v. PACT XPP Techs., AG*,
811 F.3d 758 (5th Cir. 2016) ........................................................................6, 7, 8

*Wilkin ex rel. rel. Orexigen Therapeutics, Inc. v. Narachi*,
CV 12412-VCMR, 2018 WL 1100372 (Del. Ch. Feb. 28, 2018)....................16, 17

*Williams v. WMX Techs., Inc.*,
    112 F.3d 175 (5th Cir. 1997) ...................................................................16

*Wood v. Baum*,
    953 A.2d 136 (Del. 2008) ...........................................................2, 10, 18

*In re Zale Corp. Stockholders Litig.*,
    No. 9388-VCP, 2015 WL 5853693 (Del. Ch. Oct. 1, 2015) ...................13

*Zucker v. Andreessen*,
    No. CIV.A. 6014-VCP, 2012 WL 2366448 (Del. Ch. June 21, 2012) ...................................19

## Statutes/Rules

Del. Code tit. 8, § 102(b)(7)...........................................................................15

Del. Code tit. 8, § 141 ....................................................................................10

Del. Code tit. 8, § 115 ......................................................................................8

Fed. R. Civ. P. 12(b)(6)..........................................................................1, 8, 9, 25

Fed. R. Civ. P. 9(b) ........................................................................................16

Fed. R. Civ. P. 23.1 ............................................................................... *passim*

Nominal Defendant Forterra, Inc. ("Forterra" or the "Company"), along with defendants Jeffrey K. Bradley, W. Matthew Brown, Lori M. Browne, Kyle S. Volluz, Kevin Barner, Robert Corcoran, Samuel D. Loughlin, Clint McDonnough, John McPherson, Chris Meyer, Chadwick S. Suss, and Grant Wilbeck (collectively, the "Individual Defendants"), hereby file this Motion to Dismiss for *Forum Non Conveniens*, Failure to Make a Pre-suit Demand Pursuant to Rule 23.1, and Failure to State a Claim Pursuant to Rule 12(b)(6).  In support thereof, Defendants respectfully state as follows:

## I.    PRELIMINARY STATEMENT

A purported stockholder of Forterra seeks to assert claims against current and former officers and directors of the Company based on a series of baseless and conclusory allegations, including that the Individual Defendants breached their fiduciary duties by allegedly misrepresenting the Company's financial condition and wasted the Company's assets.  Plaintiff does not claim that the alleged misconduct caused harm to her *personally*, and she does not seek damages on her own behalf.  Instead, Plaintiff claims that the alleged misconduct harmed the *Company*, and she seeks to bring state law claims *on the Company's behalf*—without complying with the procedures required by the Company's corporate organization documents and the law of the state in which the Company was incorporated (Delaware).  These claims are legally and factually baseless.  However, this Court should never reach the merits of Plaintiff's claims because the Complaint should be dismissed in its entirety for two independent reasons.

First, the Complaint should be dismissed under the doctrine of *forum non conveniens* because the Company's Amended and Restated Certificate of Incorporation (the "Certificate")[1] includes a mandatory and enforceable forum-selection clause that requires that any claims

---

[1] The Certificate is attached hereto as Exhibit 1 (App. at 1-9).

asserted on behalf of the Company be brought in a Delaware state court.  In *Atlantic Marine Construction Co. v. United States District Court for Western District of Texas*, 571 U.S. 49, 60 (2013), the U.S. Supreme Court held that a contractual forum-selection clause should be given "controlling weight in all but the most exceptional cases," and that "the appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens*."  Because the forum-selection clause here requires adjudication in a Delaware court, the Complaint should be dismissed under the doctrine of *forum non conveniens*.

<u>Second</u>, the Complaint should also be dismissed because Plaintiff failed to make a pre-suit demand before filing the Complaint, and thus does not have standing to sue in the name of the Company under Delaware law.  It is a well-established principle that the decisions of a corporate entity, including the decision to initiate litigation, are left to the discretion of the corporation's board of directors—not to stockholders.  *See Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 101 (1991).  Circumventing the Board's discretion to commence a derivative lawsuit on behalf of the Company is an extraordinary step, and it cannot be taken by Plaintiff unless she either (1) makes a pre-suit demand on the board of directors that Forterra file the lawsuit on its own behalf, or (2) pleads *particularized facts*, *on a director-by-director basis*, that demonstrate why a majority of the board is interested or lacks independence and is therefore unable to consider a demand.  *See Wood v. Baum*, 953 A.2d 136, 141-42 (Del. 2008).  Plaintiff has made no demand on the Company's Board, and she has not otherwise pleaded particularized facts sufficient to excuse the exacting demand requirement.  Instead, Plaintiff relies on a slew of conclusory allegations, all of which are insufficient under Delaware law:

- <u>First</u>, Plaintiff alleges that demand would have been futile as to certain of the directors because those directors allegedly are beholden to Forterra's largest

<u>**DEFENDANTS' MOTION TO DISMISS**</u>                                                                                          **Page 2**

stockholder, Lone Star Fund IX (U.S.), L.P. ("Lone Star"[2]). But under Delaware law, a director's connections to a stockholder only factor into a futility analysis to the extent the stockholder has a disabling interest, and Plaintiff has failed to plead facts here showing that Lone Star has a disabling interest.

- <u>Second</u>, Plaintiff argues that certain directors have a disabling interest because they face exposure to liability and would be unwilling to sue themselves or their fellow board members.  But establishing that a director has a disabling interest based on potential liability requires particularized facts pled on a director-by-director basis establishing that each of the allegedly conflicted directors faces a **substantial** likelihood of liability, not mere conclusions and speculation.  Were it otherwise, the demand requirement would be rendered toothless.  Moreover, Delaware courts recognize that satisfying this already heavy burden is made even more difficult where the company has a provision in its articles of incorporation shielding directors from any liability for breaching their duty of care to the company—as is the case here.

- <u>Finally</u>, having failed to meet her burden on her principal arguments, Plaintiff falls back on a series of conclusory and speculative arguments that have been consistently rejected by Delaware courts—including that the members of the Demand Board would be unable to consider a demand because of personal and outside business relationships, their membership on certain board committees, and their receipt of board fees.  None of these allegations are pled with the degree of particularity required under Delaware law, and thus none support Plaintiff's position that demand should be excused.

Accordingly, demand is not excused as futile, and because Plaintiff's claims are subject to a mandatory and enforceable forum-selection clause, this case should be dismissed.

## II.   RELEVANT FACTUAL BACKGROUND

### A.   Forterra, Inc.

Forterra is a Delaware corporation engaged in the manufacture of water infrastructure pipe and related products throughout the United States.  Plaintiff claims to be a stockholder of Forterra.  In the context of a shareholder derivative action, the relevant directors for a demand futility analysis are those serving on the Company's Board on the date the lawsuit was filed.  As of the date the Complaint was filed, the Company's Board consisted of ten directors: Bradley,

---

[2] For purposes of this Motion, the moving Defendants incorporate Plaintiff's definition of "Lone Star" as set forth in the Complaint, which also includes Hudson Advisors L.P. and its related entities.  (*See* Compl. ¶¶ 13, 69(a).)

Cammerer, Corcoran, LaVallle, Lewis , McDonnough, McPherson, Meyer, Sarrazin, and Volluz

(collectively, the "Demand Board"). The "Director Defendants" consist of six members of the

Demand Board (Bradley, Volluz, McPherson, Meyer, Corcoran, and McDonnough) and four

previous members of Forterra's Board who have since resigned (Barner, Loughlin, Suss, and

Wilbeck). Only one member of the Demand Board is an officer of the Company, Jeffrey Bradley

(Forterra's CEO). The other defendants, who are officers but have not served on the Board, are

Lori Browne (GC), Matthew Brown (former CFO), and William Kerfin (former President of a

division of the Company called Forterra Water Pipe & Products).

**B.      The IPO And Articles Of Incorporation**

On October 20, 2016, Forterra held an initial public offering ("IPO"). Before the IPO, on

October 7, 2016, Forterra filed its Amended and Restated Certificate of Incorporation. Section

13.1 of the Certificate provides:

> Unless the Corporation consents in writing to the selection of an alternative
> forum, to the fullest extent permitted by law, and subject to applicable
> jurisdictional requirements, the sole and exclusive forum for any stockholder
> (including any beneficial owner) to bring internal corporate claims (as defined
> below) **shall be a state court located within the State of Delaware** (or, if no
> state court located within the State of Delaware has jurisdiction, the federal
> district court for the District of Delaware). For purposes of this Article XIII,
> "internal corporate claims" means claims, including claims in the right of the
> Corporation: (a) that are based upon a violation of a duty by a current or former
> director, officer, employee or stockholder in such capacity, or (b) as to which the
> DGCL confers jurisdiction upon the Court of Chancery. (emphasis added)

**C.      Plaintiff's Derivative Complaint**

Plaintiff filed this derivative Complaint on July 31, 2018, purporting to assert claims on

behalf of the Company against certain of the Company's current and former officers and

directors for allegedly breaching their fiduciary duties and committing corporate waste in

relation to activities that occurred between March 2017 and August 2017—what the Complaint

defines as the "Relevant Period." (*See* Compl. ¶ 1.) Plaintiff's Complaint expressly disclaims

that it seeks any damages arising from activities that occurred in connection with the IPO.  (*See* Compl. ¶ 62 n.1.)[3]  Moreover, because of the contemporaneous ownership requirement, Plaintiff does not have standing to sue on behalf of the Company for any activities or alleged injuries that occurred before she allegedly purchased stock in February 2017.  (*See* Compl. ¶ 7); *see also Lambrecht v. O'Neal*, 3 A.3d 277, 284 (Del. 2010) ("[F]or a shareholder to have standing to maintain a derivative action, the plaintiff 'must not only be a stockholder at the time of the alleged wrong and at the time of commencement of suit but . . . must also maintain shareholder status throughout the litigation.'") (quoting *Lewis v. Anderson*, 477 A.2d 1040, 1046 (Del. 1984)).[4]  Although the Complaint details a series of public disclosures made by the Company during the Relevant Period, it fails to assert any particularized factual allegations suggesting that any of the defendants were involved in intentional misconduct.

### III.  ARGUMENTS AND AUTHORITIES

**A.    Plaintiff's Claims Are Subject To A Mandatory And Enforceable Forum-Selection Clause And Should Be Dismissed Under The Doctrine Of *Forum Non Conveniens*.**

First, the Court should dismiss the Complaint in its entirety because Plaintiff's claims are subject to a contractually valid forum-selection clause designating Delaware state court as the exclusive forum for any internal corporate claims brought in the name of the Company.

1.    <u>Legal Standard</u>

The U.S. Supreme Court has instructed federal courts to give "controlling weight" to contractually valid forum-selection clauses "in all but the most exceptional cases."  *Atl. Marine*, 571 U.S. at 63 (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 33 (1988)) (internal

---

[3] In contrast, the plaintiffs in the securities class action cases referenced in the Complaint, (*see* Compl. ¶ 62), rely significantly—and in one case exclusively—on allegations related to the IPO and the Registration Statement prepared in connection therewith.

[4] To the extent Plaintiff relies on allegations of misconduct pre-dating the date she purchased her stock, such allegations fail to state a claim upon which relief can be granted.

quotation marks omitted).[5]  In *Atlantic Marine*, the Court held that "the appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens*."  *Id.* at 60.  In evaluating such a clause, the Fifth Circuit first determines if the clause is mandatory and if it applies to the claims asserted in the lawsuit.  *See, e.g.*, *Weber v. PACT XPP Techs., AG*, 811 F.3d 758, 768 (5th Cir. 2016).  If so, the party seeking to avoid the agreed-upon forum must overcome the strong presumption in favor of enforcing the clause.  *See id.* at 773.  Finally, if the clause is mandatory and enforceable, the Court applies *Atlantic Marine*'s adjusted *forum non conveniens* analysis to enforce the parties' agreement.  In such an analysis, "the plaintiff's choice of forum merits no weight."  *Atl. Marine*, 571 U.S. at 63, 66 n.8.  Further, the Court does not consider the parties' private interests—the district court "may consider arguments about public-interest factors only."  *Id.* at 64, 66 n.8.  And "[b]ecause those factors will rarely defeat a [*forum non conveniens*] motion, the practical result is that forum-selection clauses should control except in unusual cases."  *Id.*  Plaintiff defied her contractual obligation to sue in Delaware state court, so Plaintiff bears the burden of establishing that dismissal is unwarranted.  *See id.* at 63.  Plaintiff cannot satisfy her burden here.

      2.    <u>This Lawsuit Falls Within The Scope Of The Certificate's Mandatory And Enforceable Forum-Selection Clause</u>.

     <u>First</u>, the selection of a Delaware forum in the Certificate is mandatory, and Plaintiff's derivative claims fall squarely within its scope.  The Certificate's forum-selection clause affirmatively requires that "**the sole and exclusive forum** for any stockholder . . . to bring internal corporate claims . . . **shall be a state court located within the State of Delaware**,"

---

[5] Because corporate organizational documents constitute a contract between stockholders and the corporation, courts uniformly understand that *Atlantic Marine's* holding extends to corporate organization documents.  *See, e.g.*, *Butorin ex rel. KBR Inc. v. Blount*, 106 F. Supp. 3d 833, 843-44 (S.D. Tex. 2015) (applying *Atl. Marine* to "contractual" forum-selection clause in defendant's corporate bylaws).

unless Forterra "consents in writing to the selection of an alternative forum."  (Certificate § 13.1 (emphases added).)[6]  "[I]nternal corporate claims" are defined as "claims, **including claims in the right of the Corporation**: (a) that are based upon a violation of a duty by a current or former director[ or] officer."  (Certificate § 13.1 (emphasis added).)  Plaintiff asserts derivative claims against current and former directors and officers based on allegations that they breached their fiduciary duties to the Company.  (*See, e.g.*, Compl. ¶¶ 1, 24-33, 71-76.)  Forterra has not consented to an alternative forum.  Accordingly, the mandatory forum-selection clause applies.

Second, Plaintiff is bound by the Certificate's forum-selection clause because the Certificate was effective when Plaintiff purchased Forterra stock on February 17, 2017 (and at all times during the Relevant Period).  (Compl. ¶ 7.)  There is a strong presumption in favor of enforcing mandatory forum-selection clauses in the Fifth Circuit.  *See Weber*, 811 F.3d at 773 ("This court, in keeping with Supreme Court precedents, applies a strong presumption in favor of the enforcement of mandatory [forum-selection clauses].").  Plaintiff can only overcome that presumption by a "clear showing that the clause is unreasonable under the circumstances."  *Id.* (internal quotation marks omitted).  Plaintiff cannot overcome the presumption here.[7]

Courts in Texas, Delaware, and across the country have found forum-selection provisions in corporate charters and bylaws to be enforceable.  *See, e.g.*, *In re Plains All Am. Derivative Litig.*, 2016 WL 6634929, at *3-4 (finding forum-selection provision in Delaware partnership

---

[6] The forum-selection clause provides that if no Delaware state court has jurisdiction, the federal district court for Delaware is the proper agreed forum.  *See id.*  Plaintiff was not free to bring her claims in federal court because the Delaware Court of Chancery has jurisdiction over Plaintiff's state-law tort claims.  *See Atl. Marine*, 571 U.S. at 63. This analysis does not change even though a federal court may also have subject-matter jurisdiction based on diversity of citizenship.  *See In re Plains All Am. Derivative Litig.*, No. H-15-3632, 2016 WL 6634929, at *3-5 (S.D. Tex. Nov. 8, 2016) (dismissing diversity case based on *forum non conveniens* where forum-selection clause required that suits be brought in Delaware state court).

[7] A forum-selection clause may be unreasonable if it was the product of fraud, if the plaintiff is effectively deprived of its day in court or remedy, or if it contravenes public policy.  *Haynsworth v. The Corp.*, 121 F.3d 956, 963 (5th Cir. 1997) (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 7 (1972)).  None of these circumstances is present here.

<u>DEFENDANTS' MOTION TO DISMISS</u>                                                            **Page 7**

agreement was enforceable and granting defendants' motion to dismiss); *Butorin*, 106 F. Supp.

3d at 843 (holding forum-selection clause in defendant's bylaws was enforceable and *sua sponte*

transferring case to Delaware federal court).[8]  Forterra's Certificate and its forum-selection

clause were effective when Plaintiff purchased Forterra stock on February 17, 2017.  (*See*

Certificate art. XIV (stating Certificate "shall become effective . . . on October 6, 2016"); Compl.

¶ 7.)  Plaintiff thus agreed when she purchased the stock that any derivative claim she may bring

in the future must be litigated in a Delaware state court.  Plaintiff has failed to allege that

enforcing the forum-selection clause would be unreasonable.

Finally, because the clause is both mandatory and enforceable, dismissal is warranted

unless Plaintiff can meet the "high burden of persuasion of the party seeking to avoid

enforcement of the [forum-selection clause]" and demonstrate that this is a "truly extraordinary

case[]" where the public-interest factors greatly outweigh enforcing the parties' agreement.

*Weber*, 811 F.3d at 776 (citing *Atl. Marine*, 571 U.S. at 64).  As there are no extraordinary or

unusual circumstances pled by Plaintiff that weigh against holding Plaintiff to her agreed-upon

forum, dismissal is required.[9]

## B.   The Complaint Fails To Establish Demand Futility Or To State A Claim.

This case should be dismissed under the doctrine of *forum non conveniens* based on the

existence of the mandatory and enforceable forum-selection clause in the Company's Certificate.

---

[8] *See also* Del. Code tit. 8, § 115 (authorizing Delaware corporations to include forum-selection clauses for internal corporate claims in their certificates of incorporation); *Billard ex rel. Liquidity Servs., Inc. v. Angrick*, 220 F. Supp. 3d 132, 139, 141-42, 142 n.9 (D.D.C. 2016) (finding forum-selection clause in defendant's bylaws was enforceable and dismissing case for *forum non conveniens* despite pending federal securities action against defendant before the same court); *City of Providence v. First Citizens BancShares, Inc.*, 99 A.3d 229, 240-41 (Del. Ch. 2014) (holding forum-selection provision in defendant's bylaws was enforceable and dismissing case).

[9] Defendants alternatively move to enforce the Certificate's forum-selection clause under Rule 12(b)(6).  While *Atlantic Marine* confirms that *forum non conveniens* is an appropriate mechanism for enforcing clauses designating nonfederal forums, the Court left open whether dismissal under Rule 12(b)(6) is also appropriate.  *See Atl. Marine*, 571 U.S. at 61.  Dismissal is justified under either procedural basis because Plaintiff's claims are subject to a mandatory and enforceable forum-selection clause designating a nonfederal forum.

But even assuming this was not the case, the Complaint should still be dismissed because Plaintiff has failed to establish that making a demand on the Company's Board would have been futile under Delaware law, and therefore she does not have standing to bring this lawsuit. Moreover, as this futility analysis reveals, she has failed to state a claim upon which relief can be granted under FRCP Rule 12(b)(6).

       1.     <u>Delaware Law Governs the Demand Futility Question</u>.

Under Federal Rule of Civil Procedure 23.1, a complaint asserting a derivative action must "state with particularity [] any effort by the plaintiff to obtain the desired action from the directors or comparable authority . . . ; and the reasons for not obtaining the action or not making the effort." Federal courts have recognized, however, that the right of a board to initiate and control litigation—and the adequacy of a claim of demand futility by an interest-holder attempting to usurp that right—are areas of substantive law affecting the "internal affairs" of a corporation. *See, e.g.*, *Kamen*, 500 U.S. at 96-97 ("In our view, the function of the demand doctrine in delimiting the respective powers of the individual shareholder and of the directors to control corporate litigation clearly is a matter of 'substance,' not 'procedure.'"). Accordingly, the substantive law of the state of incorporation governs the determination of whether a plaintiff has adequately pleaded that demand would have been futile. *See Aztec Oil & Gas, Inc. v. Fisher*, 152 F. Supp. 3d 832, 839-40 (S.D. Tex. 2016) ("The law of the nominal defendant's state of incorporation . . . determines the substantive elements of the demand requirement."). Forterra is incorporated in Delaware. Delaware law therefore governs whether Plaintiff met her burden to adequately plead demand futility.

       2.     <u>The Complaint Fails To Establish Demand Futility</u>.

It is a "cardinal precept" of Delaware law that the business and affairs of a corporation are managed under the direction of its board of directors. *Aronson v. Lewis*, 473 A.2d 805, 811

(Del. 1984); *see* Del. Code tit. 8, § 141(a).  Such directors are entitled to a presumption that they performed their duties to the corporation on an informed basis, in good faith, and in the honest belief that the action taken was in the best interests of the company.  *See Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart*, 845 A.2d 1040, 1048-49 (Del. 2004).  One of the most significant responsibilities that rests with the directors of a corporation is "the decision to bring a lawsuit or to refrain from litigating a claim on behalf of the corporation."  *King v. Baldino*, 648 F. Supp. 2d 609, 616 (D. Del. 2009), *aff'd*, 409 F. App'x 535 (3d Cir. 2010).

"[B]y its very nature [a] derivative action impinges on the managerial freedom of directors."  *Stone ex rel. AmSouth Bancorporation v. Ritter*, 911 A.2d 362, 366 (Del. 2006) (internal quotation marks omitted).  To mitigate this impingement, a stockholder's ability to bring a derivative action is "limited to situations where either the stockholder has demanded the directors pursue a corporate claim and the directors have wrongly refused to do so, or where demand is excused because the directors are incapable of making an impartial decision regarding whether to institute such litigation."  *Id.* at 366-67.

The failure to make a demand is not a trivial procedural matter.  It is an established rule of substantive law in Delaware, and to meet it, a stockholder must "comply with stringent requirements of factual particularity."  *Wood*, 953 A.2d at 140-41.  Were it otherwise, stockholders would end-run boards of directors and stand in the shoes of companies as a general course.  Accordingly, "the bar is high, the standards are stringent, and the situations where demand will be excused are rare."  *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Raines*, 534 F.3d 779, 782-83 (D.C. Cir. 2008) (applying Delaware law).  Plaintiff indisputably has not served a demand on the Board, (Compl. ¶ 69), and therefore under Delaware law must satisfy the "stringent requirements of factual particularity" in order to establish that demand was futile.  *Wood*, 953 A.2d at 140-41.

**DEFENDANTS' MOTION TO DISMISS**                                                    **Page 10**

Delaware courts have articulated two tests for evaluating whether demand is excused, depending on the circumstances.  When a complaint challenges an affirmative decision by the board, the ***Aronson*** standard applies, under which a plaintiff must plead particularized facts creating a reasonable doubt that (1) a majority of the board is disinterested and independent or (2) the challenged transaction was otherwise the product of a valid exercise of business judgment.  *See Aronson*, 473 A.2d at 814.  When the complaint challenges board inaction, the ***Rales*** standard applies, under which the court only considers the first prong of *Aronson—i.e.*, whether a majority of the board is disinterested and independent.  *See Rales v. Blasband*, 634 A.2d 927, 934 (Del. 1993).  Regardless of which test applies, Delaware courts have recognized that "the demand futility analysis focuses on whether there is a reason to doubt the impartiality of the directors," *i.e.*, whether they are independent and disinterested.  *Lenois v. Lawal*, CV 11963-VCMR, 2017 WL 5289611, at *13 (Del. Ch. Nov. 7, 2017).  "To establish demand futility under *Aronson* or *Rales* . . . , Plaintiff must impugn the ability of at least half of the directors in office when it initiated this action (*i.e.*, the Demand Board) to have considered a demand impartially." *Teamsters Union 25 Health Servs. & Ins. Plan v. Baiera*, 119 A.3d 44, 57 (Del. Ch. 2015).

At the pleading stage, there is a presumption that the directors are independent and disinterested.  *See Beam*, 845 A.2d at 1048-49.  To overcome this presumption, a complaint must allege particularized factual allegations "*specific to each director*, demonstrating that at least half of them could not have exercised disinterested business judgment in responding to a demand." *Desimone v. Barrows*, 924 A.2d 908, 943 (Del. Ch. 2007).  "A director is interested if he will be materially affected, either to his benefit or detriment, by a decision of the board, in a manner not shared by the corporation and the stockholders."  *Seminaris v. Landa*, 662 A.2d 1350, 1354 (Del. Ch. 1995).  "[A] director lacks independence if he or she is dominated or controlled **by an**

**interested party**." *In re Affiliated Comput. Servs., Inc. S'holders Litig.*, CIV.A. 2821-VCL, 2009 WL 296078, at \*9 (Del. Ch. Feb. 6, 2009) (emphasis added).

The requirement that a plaintiff plead facts with particularity imposes a "stringent" requirement that differs "substantially" from mere notice pleading. *Brehm v. Eisner*, 746 A.2d 244, 254 (Del. 2000). It requires a derivative plaintiff to set forth the "particularized factual statements that are essential to the claim." *Id.* Conclusory allegations will not suffice. *Beam*, 845 A.2d at 1048 (citing *White v. Panic*, 783 A.2d 543, 549 (Del. 2001)). "Likewise, inferences that are not objectively reasonable cannot be drawn in the plaintiff's favor." *Id.* These pleading requirements protect corporations from a "stockholder's quixotic pursuit of a purported corporate claim based solely on conclusions, opinions or speculation." *Brehm*, 746 A.2d at 255.

The Complaint contains "nothing close to the fact-intensive, director-by-director analysis required to meet the pleading standard for demand futility." *Postorivo v. AG Paintball Holdings, Inc.*, Nos. CIV.A. 2991-VCP, CIV.A. 3111-VCP, 2008 WL 553205, at \*6-7 (Del. Ch. Feb. 29, 2008). Plaintiff instead relies on impermissible group pleading, speculation, and insinuation, all of which are insufficient to satisfy the pleadings standards required by Delaware law.

3.      Alleged Connections To Lone Star Are Immaterial To The Futility Analysis.

First, Plaintiff alleges that a majority of the Board lacks independence because they are employed by Forterra's largest stockholder, Lone Star, and/or own equity in Lone Star. (*See* Compl. ¶ 69(a).) This allegation, without more, is not enough. Critical to the analysis are particularized factual allegations that the stockholder has a disabling interest—*i.e.*, would receive a material benefit or suffer a material detriment not shared by other stockholders. Plaintiff has not and cannot make such allegations.

Under Delaware law, establishing that directors lack independence as to a stockholder is only relevant to the extent the stockholder has a disabling interest. *See Continuing Creditors'*

*Comm. of Star Telecomm., Inc. v. Edgecomb*, 385 F. Supp. 2d 449, 462 (D. Del. 2004) ("It is obvious, though, that showing a director lacks independence because of a subservient relationship to an interested person depends in the first instance on a showing that the supposedly dominating person actually is interested in the transaction in question"); *see also In re Crimson Exploration Inc. Stockholder Litig.*, No. 8541-VCP, 2014 WL 5449419, at *21-22 (Del. Ch. Oct. 24, 2014). To establish a disabling interest, Plaintiff was required to plead particularized facts establishing that the stockholder would receive some benefit or suffer some detriment *that differs from what was received by other stockholders. See In re Affiliated Comput. Servs.*, 2009 WL 296078, at *8–9. Otherwise, a large stockholder's interests are assumed to be consistent with that of other stockholders. *See In re Morton's Rest. Grp., Inc. S'holder Litig.*, 74 A.3d 656, 666-67 (Del. Ch. 2013) ("In most situations, the controlling stockholder has interests identical to other stockholders: to maximize the value of its shares."); *see also In re Zale Corp. Stockholders Litig.*, No. 9388-VCP, 2015 WL 5853693, at *13 (Del. Ch. Oct. 1, 2015); *Chen v. Howard-Anderson*, 87 A.3d 648, 670-71 (Del. Ch. 2014).

In other words, whether a director is beholden to a stockholder is irrelevant in the absence of well-pled allegations establishing that the stockholder suffers from a disabling interest. For example, in *Brehm*, stockholder-plaintiffs of Disney sought to bypass the demand requirement by alleging that the director-defendants were beholden to Disney's Chairman of the Board and CEO, Michael Eisner. Although the Delaware Court of Chancery determined that certain of the board members were dominated by Eisner, the Delaware Supreme Court declined to address the issue of independence. Instead, the Court held that plaintiffs failed to meet their threshold requirement of pleading facts sufficient to give rise to a reasonable inference that Eisner had a disabling interest. The Court reasoned that Eisner's economic interest was aligned with the company's and that he would not have benefited from the complained-of activity. *Brehm,* 746

A.2d at 257-58.  Consequently, the Court concluded that analyzing independence was

unnecessary.  *Id.*

Here, Lone Star is not a named defendant.  Nor are there any particularized factual

allegations that would support an inference that Lone Star was involved in, or had any potential

liability for, the misconduct alleged in the Complaint—which is expressly limited to activities

that occurred **during the so-called "Relevant Period"** (*i.e.*, between March 2017 and August

2017).  (*See* Compl. ¶ 1.)  Rather, allegations regarding Lone Star's involvement generally relate

to activities that occurred **before** the Relevant Period and even before Forterra became a public

company in October 2016. (*See* Compl. ¶¶ 42, 46.)

Moreover, the only claims at issue involve allegations that the Company's current and

former officers and directors breached their fiduciary duties to the Company and wasted the

Company's assets.  Such claims do not create a conflict with the Company's largest stockholder,

whose interest would have been aligned with other stockholders in wanting to ensure that the

Company was managed effectively, that its directors acted consistent with their duties of loyalty

to the Company, and that the Company's assets were not wasted.  *See City of Miami Gen. Emps.*

*v. Comstock*, No. CV 9980-CB, 2016 WL 4464156, at *20 (Del. Ch. Aug. 24, 2016), *aff'd on*

*other grounds*, 158 A.3d 885 (Del. 2017) ("Comstock's large equity position helped to align his

interests with stockholders[.]").  Accordingly, allegations that certain directors lack

independence because they are employed by or owned stock in Lone Star does not establish

futility.

4.   Plaintiff Fails To Plead Particularized Factual Allegations That Members Of The Demand Board Face A Substantial Likelihood Of Liability.

Second, Plaintiffs also contend that demand is futile because a majority of the directors

face potential liability based on the allegations in the Complaint and would be unwilling to sue

themselves. (*See* Compl. ¶ 69(h), (m).)  Delaware courts have characterized this overused and

frequently rejected argument—that demand is futile because directors would not sue themselves—as a "bootstrap argument" that  "would effectively abrogate" the demand requirement altogether.  *Aronson*, 473 A.2d at 818 (noting that the acceptance of such an argument "would effectively abrogate Rule 23.1 and weaken the managerial powers of directors"); *see Brehm*, 746 A.2d at 257 n.34 ("It is no answer to say that demand is necessarily futile because (a) the directors would have to sue themselves, thereby placing the conduct of the litigation in hostile hands, or (b) that they approved the underlying transaction.") (internal quotation marks omitted).  Accordingly, to establish futility based on the potential liability of directors, a plaintiff must do more than satisfy notice pleading standards.  Rather, a plaintiff must allege particularized facts on a director-by-director basis establishing that the directors face a **substantial** likelihood of liability.  *See In re Goldman Sachs Grp.*, *Inc. S'holder Litig.*, No. 5215-VCG, 2011 WL 4826104, at *18 (Del. Ch. Oct. 12, 2011) ("A simple allegation of potential directorial liability is insufficient to excuse demand, else the demand requirement itself would be rendered toothless, and directorial control over corporate litigation would be lost."). Moreover, satisfying this standard is far more difficult where, as here, the company's Certificate includes an exculpatory provision authorized by Del. Code. tit. 8, § 102(b)(7)—which provides that a corporation may eliminate a director's personal liability for breaches of the duty of care.[10] Under such circumstances, Plaintiff must plead particularized facts establishing a substantial likelihood of liability for *non-exculpated claims*, *i.e.*, breaches of the fiduciary duty of loyalty. *Lenois*, 2017 WL 5289611, at *14.  "This means that [Plaintiff] must plead particularized facts

---

[10] *See* Certificate (App. at 5) at § 11.1 ("To the fullest extent permitted by the DGCL . . . no director of the Corporation shall be personally liable to the Corporation or its stockholders for monetary damages for breach of fiduciary duty as a director."); *see also In re Goldman Sachs Grp.*, 2011 WL 4826104, at *18 ("The likelihood of directors' liability is significantly lessened where, as here, the corporate charter exculpates the directors from liability to the extent authorized by 8 Del. C. § 102(b)(7).").

showing bad faith in order to establish a substantial likelihood of personal directorial liability." *In re Goldman Sachs Grp.*, 2011 WL 4826104, at *18.  The allegations in the Complaint do not come close to satisfying this standard here.

a.    *Plaintiff Fails To Establish A Substantial Likelihood Of Liability Based On Alleged Breach Of Fiduciary Duty.*

First, Plaintiff has failed to plead facts with sufficient particularity to establish that the Director Defendants face a substantial likelihood of liability for breaching their fiduciary duties. (*See* Compl. ¶¶ 71-76.)  This claim appears to be based primarily on Plaintiff's conclusory allegation that the Director Defendants "fail[ed] to prevent and correct the false financial reporting" alleged in the Complaint during the Relevant Period.  (*See* Compl. ¶ 69(h).) [11]  The allegations in the Complaint fail to state a plausible claim.

Because the Director Defendants are exculpated from any alleged violation of the duty of care, Plaintiff can only establish a substantial likelihood of liability by pleading particularized facts on a director-by-director basis establishing that each individual director breached his or her duty of loyalty to the company.  "To successfully state a duty of loyalty claim against directors for providing information in the absence of a request for shareholder action, a stockholder must allege that he received 'false communications' from directors who were **deliberately misinforming** shareholders about the business of the corporation." *Wilkin ex rel. Orexigen*

---

[11] Plaintiff also asserts an equitable claim for constructive fraud against the director defendants based on alleged breach of their duty of candor.  This claim is duplicative of Plaintiff's breach of fiduciary duty claims and fails for the same reasons.  *See In re Wayport, Inc. Litig.*, 76 A.3d 296, 327 (Del. Ch. 2013) ("On the facts of this case, the breach of fiduciary duty count confronts directly the implications of the fiduciary relationship, rendering the constructive fraud count redundant and superfluous.").   Moreover, this claim also fails because it sounds in fraud and does not satisfy Rule 9(b)'s heightened pleading standard.  *See Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177–78 (5th Cir. 1997).  In addition, Plaintiff asserts claims against the defendants for "aid[ing] and abet[ing]" breaches of fiduciary duty.  (Compl. ¶ 72).  Under Delaware law, however, officers and directors of a corporation, who are themselves fiduciaries, cannot be liable for aiding and abetting breaches of fiduciary duty.  *See, e.g., Higher Educ. Mgmt. Group, Inc. v. Mathews*, CIV.A. 9110-VCP, 2014 WL 5573325, at *13 (Del. Ch. Nov. 3, 2014).

*Therapeutics, Inc. v. Narachi*, CV 12412-VCMR, 2018 WL 1100372, at *14 (Del. Ch. Feb. 28, 2018) (emphasis added).  A plaintiff must also show "reliance, causation, and damages." *Id.*[12]

Here, the Complaint appears to rely on statements made in a series of press releases and public filings made by the Company during the "Relevant Period," including: (1) a press release issued on March 29, 2017; (2) the Company's 2016 Form 10-K, submitted on March 31, 2017; (3) the 2017 Proxy Statement mailed on April 28, 2017, which incorporated the 2016 10-K; (4) a press release issued on May 15, 2017; and (5) the Company's Form 10-Q for Q1 2017, filed on May 15, 2017.  (Compl. ¶¶ 45-62.)  Although Plaintiff included conclusory allegations that the directors "caused" the Company to issue such statements, there is not a single particularized factual allegation anywhere in the Complaint that would support a reasonable inference that any of the directors acted in bad faith and with the intention of deliberately misinforming stockholders, much less that they have substantial exposure to liability for doing so.  Indeed, there are virtually no specific allegations of wrongdoing on a director-by-director basis **at all**.  Plaintiff instead relies almost exclusively on general group pleading, which is insufficient to establish demand futility under Delaware law.  *See Livermore v. Engles*, 3-10-CV-0882-BD, 2010 WL 3583999, at *3 (N.D. Tex. Sept. 13, 2010) (applying Delaware law) ("[P]laintiff treats all defendants collectively and contends that, as a group, the directors caused Dean Foods to engage in illegal conduct . . . Such 'group accusations' are insufficient to satisfy the pleading requirements of Rule 23.1.").  In and of itself, this is sufficient to defeat Plaintiff's futility allegations based on the purported liability of Demand Board members for allegedly breaching their duty of loyalty with respect to allegedly incomplete or inaccurate financial disclosures.  *In*

---

[12] Even with the more lenient standard that applies where stockholder action is sought, Plaintiff's claims would still fail because the Complaint fails to plead facts sufficient to establish materiality.  *See Malone v. Brincat*, 722 A.2d 5, 12 (Del. 1998).

*re Citigroup Inc. S'holder Derivative Litig.*, 964 A.2d 106, 134 (Del. Ch. 2009) (holding that "broad group allegations" are insufficient under rule 23.1, because "[a] determination of whether the alleged misleading statements or omissions were made with knowledge or in bad faith requires an analysis of the state of mind of the individual director defendants"); *see also Ogden v. Bryant*, CV H-15-0139, 2015 WL 7717127, at *2 (S.D. Tex. Nov. 25, 2015).

Nor does the Complaint come close to pleading individual reliance with particularity, a necessary element of a claim that a director breached the duty of loyalty by disseminating false information to stockholders.  *See Narachi*, 2018 WL 1100372, at *15 ("And if a complaint does not allege statements made to shareholders in conjunction with a request for shareholder action, a plaintiff cannot rely on a rebuttable presumption of reliance i.e. the fraud on the market theory.") (internal quotation marks omitted).  This is also sufficient, standing alone, to defeat Plaintiff's futility argument and to warrant dismissal of her claims.  *See id.* ("Plaintiff has not pled a single fact related to an element of his claim—individual reliance. . . .  As reflected in *Wood*, a failure to plead an element of a claim precludes a finding that the directors face a substantial likelihood of liability for that claim such that demand is excused.").[13]

b.      *Plaintiff's Waste Claim Does Not Establish Demand Futility.*

Second, Plaintiff also asserts that the Director Defendants are liable for corporate waste, (*See* Compl. ¶ 82.)  Under Delaware law, Plaintiff bears an exceedingly heavy burden to state a

---

[13] The Complaint vaguely hints that Plaintiff's may also assert a claim that the Director Defendants breached their fiduciary duties by allegedly failing to exercise adequate oversight of the Company—a so-called *Caremark* claim. (*See* Compl. ¶ 45.) Director liability premised on allegedly deficient oversight has been recognized as "possibly the most difficult theory in corporation law upon which a plaintiff might hope to win a judgment."  *In re Caremark Int'l Inc. Derivative Litig.*, 698 A.2d 959, 967 (Del. Ch. 1996); *see also Stone*, 911 A.2d at 372.  To do so requires well-pled allegations of something on the scale of "an utter failure to attempt to assure a reasonable information and reporting system exists."  *In re Caremark*, 698 A.2d at 971.  Conclusory allegations that the directors did a poor job of overseeing the company and/or preventing misconduct are insufficient to satisfy this standard.  *See In re Gen. Motors Co. Derivative Litig.*, CV 9627-VCG, 2015 WL 3958724, at *17 (Del. Ch. June 26, 2015) ("Pleadings, even specific pleadings, indicating that directors did a poor job of overseeing risk in a poorly-managed corporation do not imply director bad faith."), *aff'd*, 133 A.3d 971 (Del. 2016).

claim for corporate waste.  To do so, "the Complaint must allege particularized facts that lead to a reasonable inference that the director defendants authorized an exchange that is so one sided that no business person of ordinary, sound judgment could conclude that the corporation has received adequate consideration." *Narachi*, 2018 WL 1100372, at *16 (internal quotation marks omitted).  This is "an extreme test" that is "very rarely satisfied by a shareholder plaintiff." *Zucker v. Andreessen*, No. CIV.A. 6014-VCP, 2012 WL 2366448, at *8 (Del. Ch. June 21, 2012).  The allegations must "overcome the general presumption of good faith by showing that the board's decision was so egregious or irrational that it could not have been a valid assessment of the corporation's best interests." *Narachi*, 2018 WL 1100372, at *16.  But Plaintiff's waste claim is based wholly on speculation and conclusory allegations and does not come close to meeting the exacting standard for calling the Board's business judgment into question.

Plaintiff's waste claim appears to be based principally on the allegation that the directors treated defendant Brown's resignation as a "resignation for good reason" pursuant to the terms of his employment agreement, thereby allowing him to walk away with "more than $1 million" in severance payments.  (Compl. ¶ 69(h).)  But there are no particularized factual allegations that the resignation was not "for good reason," much less that the amount paid was "so egregious or irrational that it could not have been a valid assessment of the corporation's best interests." *Narachi*, 2018 WL 1100372, at *16.  Although Plaintiff alleges that Brown was involved in various public disclosures, Plaintiff does not allege with particularity that Brown was personally involved in any misconduct, that any individual Board members were aware of his involvement in such, or that the nature of his involvement would have supported a "for cause" termination under the terms of his employment agreement.  And even assuming the Complaint did include such allegations, they would still be insufficient to satisfy Plaintiff's burden of establishing that there was a "complete failure of consideration," such that the company "literally [received]

nothing whatsoever for what it gave." *In re 3COM Corp. S'holders Litig.*, No. C.A. 16721, 1999 WL 1009210, at *4 (Del. Ch. Oct. 25, 1999).   To satisfy such a burden, Plaintiff would also have to plead particularized factual allegations giving rise to a reasonable inference that there was not some other consideration driving the Board's decision—for example, the desire to avoid litigation expenses or the possibility of bad publicity.  *See Brehm*, 746 A.2d at 265 (noting that even if Board had arguable grounds to terminate executive "for cause," other considerations may have weighed against doing so, including litigation risks, loss of company resources, and bad publicity).  Accordingly, Plaintiff's allegations fall woefully short of establishing that demand should be excused based on a claim of corporate waste.[14]

> 5.    Conclusory Allegations That Directors Have Personal or Business Relationships Are Insufficient To Excuse Demand.

Finally, Plaintiff's suggestion that the directors would be unable to impartially consider a demand because of their personal and business relationships with other Demand Board members also fails to warrant excusing the demand requirement.  Delaware law is clear that **bare allegations** that such relationships exist are insufficient.  *See Huff Energy Fund, L.P. v. Gershen*, No. CV 11116-VCS, 2016 WL 5462958, at *12 (Del. Ch. Sept. 29, 2016) ("Our law is clear that 'personal friendships, without more; outside business relationships, without more; and approving of or acquiescing in the challenged transactions, without more, are each insufficient to raise a reasonable doubt of a director's ability to exercise independent business judgment." (citation omitted)).  But bare, conclusory, and speculative allegations are exactly what Plaintiff relies on here.  (*See, e.g.*, Compl. ¶ 69(g) ("These are people with whom they have developed professional

---

[14] Although Plaintiff also summarily alleges that Defendants committed waste by "failing to properly consider the interests of the Company and its public shareholders," "failing to conduct proper supervision," and "failing to seek indemnity from [defendant Brown] or any other Officer Defendant," (Compl. ¶ 82), the factual basis for such claims is wholly unclear from the face of the Complaint. In any event, Plaintiff has failed to allege particularized facts establishing that there was an "exchange that is so one sided that no business person of ordinary, sound judgment could conclude that the corporation has received adequate consideration." *Narachi*, 2018 WL 1100372, at *16.

relationships, who are their friends and with whom they have entangling financial alliances, interests and dependencies."). Plaintiff fails to provide any particularized factual allegations demonstrating the type of closeness required to give rise to a reasonable doubt that the directors would be unable to independently assess demand. *See Beam*, 845 A.2d at 1051 ("Whether they arise before board membership or later as a result of collegial relationships among the board of directors, such affinities — standing alone — will not render presuit demand futile."); *In re Dow Chem. Co. Derivative Litig.*, No. CIV.A. 4349-CC, 2010 WL 66769, at *9 (Del. Ch. Jan. 11, 2010) ("That directors of one company are also colleagues at another institution does not mean that they will not or cannot exercise their own business judgment with regard to the disputed transaction."); *Midwestern Teamsters Pension Tr. Fund v. Baker Hughes Inc.*, CIV.A H-08-1809, 2009 WL 6799492, at *9 (S.D. Tex. May 7, 2009) (futility allegations insufficient where they "do no more than list the various business and social affiliations outside of [the company] that the current Board members enjoy").[15]

      6.    <u>Director By Director Analysis</u>

Because Delaware law requires that the futility analysis be conducted on a director-by-director basis, the following provides a summary of why Plaintiff's futility allegations fail as to individual directors. The group-pled arguments discussed above are incorporated herein.

      a.    *Jacques Sarrazin*

Plaintiff's bare allegation that Sarrazin received fees for serving as a director is insufficient to establish that he lacks independence. (Compl. ¶ 69(j).) Under Delaware law,

---

[15] Plaintiff also summarily alleges that demand is futile because the Company's D&O policy allegedly precludes coverage if Forterra sues the directors directly (under the "insured versus insured exclusion"). Delaware courts have considered this argument and rejected it. *See Ellis v. Gonzalez*, No. CV 2017-0342-SG, 2018 WL 3360816, at *11 (Del. Ch. July 10, 2018) (allegation that insurance would not cover an action brought by the company against its own directors just a variation on the "directors suing themselves and participating in the wrongs refrain" and insufficient to give rise to a reasonable doubt that directors are disinterested or independent).

"allegations that directors are paid for their services as directors . . . without more, do not establish any financial interest." *King*, 648 F. Supp. 2d at 618.  In order for fees to call into question a director's independence, Plaintiff must plead particularized facts showing that the fees "exceed materially what is commonly understood and accepted to be a usual and customary director's fee." *Ryan v. Gursahaney*, No. 9992-VCP, 2015 WL 1915911, at *8 n.45 (Del. Ch. Apr. 28, 2015), *aff'd*, 128 A.3d 991 (Del. 2015).  The Complaint makes no such showing. Plaintiff's allegation that Sarrazin is interested because he was named as a defendant in the securities actions is insufficient because Plaintiff has failed to plead particularized facts showing that Sarrazing is subject to a substantial likelihood of liability, as set forth in Part III.B.4.  *See Seminaris*, 662 A.2d at 1354 (argument that director is interested because he was named in a federal securities action "a slightly altered version of the discredited refrain—'you can't expect directors to sue themselves'").

b.    *John McPherson*

First, Plaintiff's allegation that McPherson is compromised because he received fees for his services on the Board, (Compl. ¶ 69(j)), is insufficient for the reasons set forth above in Part III.B.6(a)  Second, Plaintiff's allegation that McPherson is interested because he served on the Board's Compensation and Audit Committees, (Compl. ¶ 69(f)), fails because "as numerous Delaware decisions make clear, an allegation that the underlying cause of a corporate trauma falls within the delegated authority of a board committee does not support an inference that the directors on that committee knew of and consciously disregarded the problem for purposes of Rule 23.1." *South v. Baker*, 62 A.3d 1, 17 (Del. Ch. 2012).  Third, Plaintiff's bare allegation that McPherson cannot act independently of Meyer because they worked together at McKinsey & Company, Inc.,  (¶ 69(c)), fails because bare allegation that directors previously worked together is insufficient to call into question a director's independence, as discussed in Part III.B.5.

Plaintiff cannot establish that McPherson is exposed to a substantial likelihood of liability for the reasons set forth in Parts III.B.4 and III.B.6(a).

        c.     *Robert Corcoran*

Plaintiff's allegation that Corcoran lacks independence because he is employed by Lone Star and owns equity in Lone Star, (Compl. ¶ 69(a)), fails to establish that Corcoran lacks independence for the reasons discussed in Part III.B.3, *supra*. Plaintiff cannot establish that Corcoran is exposed to a substantial likelihood of liability for the reasons set forth in Parts III.B.4 and III.B.6(a).

        d.     *Richard Cammerer, Jr.*

Plaintiff's allegation that Cammerer lacks independence because he is employed by Lone Star, (Compl. ¶ 69(a)), fails for the reasons set forth in Part III.B.3. Plaintiff cannot establish that Cammerer is exposed to a substantial likelihood of liability as set forth in Part III.B.4.

        e.     *Kyle Volluz*

Plaintiff's allegation that Volluz lacks independence because he is employed by Lone Star and owns equity in Lone Star, (Compl. ¶ 69(a)), fails for the reasons discussed in Part III.B.3, *supra*. Plaintiff cannot establish that Volluz is exposed to a substantial likelihood of liability for the reasons set forth in Parts III.B.4 and III.B.6(a).

        f.     *Dominic LaValle*

Plaintiff's allegation that LaValle lacks independence because he is employed by Lone Star fails for the reasons set forth in Part III.B.3. Plaintiff's allegation that LaValle lacks independence because he served on the board of another company with director Lewis, (Compl. ¶ 69(c)), fails because bare allegations of outside business relationships are insufficient to establish futility, as set forth in Part III.B.5. Plaintiff cannot establish that LaValle is exposed to a substantial likelihood of liability for the reasons set forth in Parts III.B.4.

g.    *Chad Lewis*

Plaintiff's bare allegation that Lewis lacks independence because he serves on an outside

board with defendant LaValle, (Compl. ¶ 69(c)), fails for the reasons set forth in Part III.B.5.

Plaintiff's allegation Lewis lacks independence because he is employed by Lone Star fails for the

reasons set forth in Part III.B.3. Plaintiff cannot establish that Lewis is exposed to a substantial

likelihood of liability for the reasons set forth in Parts III.B.4.

h.    *Chris Meyer*

Plaintiff's allegation that Meyer lacks independence because he is employed by Lone Star

and owns equity in Lone Star fails for the reasons set forth in Part III.B.3.  Plaintiff's allegation

that Meyer is interested because he is a member of the Compensation Committee, (¶ 69(f)), fails

because allegations of committee membership are insufficient to establish demand futility, as set

forth in Part III.B.6(b).  Plaintiff's allegation that Meyer lacks independence because he worked

with Director McPherson at McKinsey is a bare allegation of an outside business relationship

and fails for the same reasons set forth in Part III.B.5.  Meyer is not exposed to a substantial

likelihood of liability for the reasons set forth in Parts III.B.4 and III.B.6(a).

i.    *Clint McDonnough*

Plaintiff alleges that McDonnough is compromised because he previously served as

managing partner at Ernst & Young LLP ("E&Y"), the Company's independent auditor, and still

relies on E&Y to fund his retirement.  (Compl. ¶ 69(d).)  Yet, the Complaint is devoid of any

particularized factual allegations that E&Y has the right or ability to tamper with McDonnough's

retirement, and a bare allegation that he used to work there is insufficient.  *See Park Emps. &

Ret. Bd. Emps.' Annuity v. Smith*, No. CV 11000-VCG, 2017 WL 1382597, at \*7 (Del. Ch. Apr.

18, 2017) (rejecting claim that former managing partner of PwC was compromised because

bringing suit would reflect negatively on PwC)  Plaintiff also alleges that McDonnough could

not consider a demand impartially because he owns equity in Lone Star, (Compl. ¶ 69(a)), was a member of the Board's Audit Committee, (Compl. ¶ 69(e)), received fees for Board service, (Compl. ¶ 69(j)), and is allegedly exposed to liability (Compl. ¶ 69(m)).  These allegations fail for the reasons set forth above in Parts III.B.3, III.B.6.b, III.B.6.a, and III.B.4, respectively.

> j.      *Jeffrey Bradley*

For each of the foregoing members of the Demand Board, Plaintiff failed to plead factual allegations on a director-by-director basis sufficient to give rise to a reasonable doubt that they could not have impartially considered a demand.  Because this represents a majority of the Demand Board, the Court does not need to reach the issue of whether Jeffrey Bradley— Forterra's CEO—could also have impartially considered a demand.  Nevertheless, Plaintiff's allegations as to Bradley are similarly conclusory, and her allegations that he could not have impartially considered a demand fail for all of the reasons previously discussed.

## IV.      CONCLUSION

For the foregoing reasons, Nominal Defendant Forterra and the Individual Defendants respectfully requests that the Court dismiss Plaintiff's Complaint under the doctrine of *forum non conveniens* or, in the alternative, for failure to adequately plead demand futility under Rule 23.1 and failure to state a claim upon which relief can be granted under Rule 12(b)(6).  Pursuant to section II.B of the Court's Motion Practice requirements, Moving Defendants asserts that oral argument could be of particular help in this matter.

Dated: November 16, 2018                          Respectfully submitted,

/s/ M. Scott Barnard                              /s/ Angela C. Zambrano
M. Scott Barnard                                  Yvette Ostolaza
Texas Bar No. 24001690                            Texas Bar No. 00784703
Michelle A Reed                                   Angela C. Zambrano
Texas Bar No. 24041758                            Texas Bar No. 24003157
Daniel S. Park                                    Yolanda C. Garcia
Texas Bar No. 24104063                            Texas Bar No. 24012457

AKIN GUMP STRAUSS HAUER & FELD                    SIDLEY AUSTIN LLP
LLP                                               2021 McKinney Avenue, Suite 2000
1700 Pacific Ave., Suite 4100                     Dallas, Texas 75201
Dallas, Texas 75201-4618                          Telephone:  (214) 981-3300
Telephone: (214) 969-2800                         Facsimile:  (214) 981-3400
Facsimile: (214) 969-4343                         Email:  Yvette.ostolaza@sidley.com
Email:  sbarnard@akingump.com                     Email:  Angela.zambrano@sidley.com
Email:  mreed@akingump.com                        Email:  Ygarcia@sidley.com
Email:  dspark@akingump.com
                                                  *Attorneys for Nominal Defendant Forterra,*
*Attorneys for William Matthew Brown*             *Inc., and Individual Defendants Jeffrey*
                                                  *Bradley, Lori M. Browne, Kyle S. Volluz,*
                                                  *Kevin Barner, Robert Corcoran, Samuel D.*
                                                  *Loughlin, Clint McDonnough, John*
                                                  *McPherson, Chris Meyer, Chadwick Suss,*
                                                  *and Grant Wilbeck*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 16, 2018, I electronically filed the above Defendant

Forterra, Inc.'s Brief in Support of Its Motion to Dismiss with the Clerk of the Court using the

CM/ECF system, which will automatically send email notification of such filing to all attorneys of

record.

                                                  /s/ Angela C. Zambrano
                                                  Angela C. Zambrano