UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF TEXAS

DALLAS DIVISION

| | | |
|---|---|---|
| NANCY G. MALONEY, Derivatively on Behalf of FORTERRA, INC., | § § § | Civil Action No. 3:18-cv-01980-G |
| Plaintiff, | § § | |
| vs. | § § | |
| JEFFREY K. BRADLEY, W. MATTHEW BROWN, LORI M. BROWNE, WILLIAM KERFIN, KYLE S. VOLLUZ, KEVIN BARNER, ROBERT CORCORAN, SAMUEL D. LOUGHLIN, CLINT McDONNOUGH, JOHN McPHERSON, CHRIS MEYER, JACQUES SARRAZIN, CHADWICK S. SUSS and GRANT WILBECK, | § § § § § § § § § § § | |
| Defendants, | § § | **ORAL ARGUMENT REQUESTED** |
| – and – | § § | |
| FORTERRA, INC., a Delaware corporation, | § § | |
| Nominal Defendant. | § § | |

**OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FOR FORUM NON CONVENIENS, FAILURE TO MAKE A PRE-SUIT DEMAND PURSUANT TO RULE 23.1, AND FAILURE TO STATE A CLAIM PURSUANT TO RULE 12(B)(6)**

| | |
|---|---|
| **BALON B. BRADLEY LAW FIRM** BALON B. BRADLEY (Texas Bar No. 02821700) Balon B. Bradley BALON B. BRADLEY 5473 Blair Road, Suite 100 Dallas, TX  75231 Telephone:  972/991-1582 972/755-0424 (fax) | **ROBBINS GELLER RUDMAN & DOWD LLP** SAMUEL H. RUDMAN MARY K. BLASY (admitted *pro hac*) 58 South Service Road, Suite 200 Melville, NY 11747 Telephone:  631/367-7100 631/367-1173 (fax) |

*Attorneys for Plaintiff Nancy G. Maloney* [Add'l Counsel Appear in the Signature Block]

## TABLE OF CONTENTS

**Page**

INTRODUCTION .................................................................................................1

RELEVANT FACTUAL BACKGROUND AND PROCEDURAL HISTORY ...........................3

ARGUMENTS.....................................................................................................6

I.      THE FORUM SELECTION CLAUSE IS NOT ENFORCEABLE...................................6

      A.     Having Successfully Argued for Texas as the Proper Forum, Defendants Cannot Now Stand on the FSC to the Detriment of Plaintiff's Interst in Prosecuting These Claims Here ................................................9

      B.     The FSC at Issue Here Is Not Mandatory Because Delaware Courts Lack Personal Jurisdiction Over All Defendants.............................................10

      C.     The §1404(a) Factors Militate Against a Transfer Based On *Forum Non Conveniens* ........................................................................................11

II.     THE COMPLAINT ADEQUATELY ALLEGES DEMAND FUTILITY ......................13

      A.     A Majority of the Board Was Employed by and the Entire Board Was Hand-Selected by Controlling Shareholder Lone Star and its Affiliate Hudson .............................................................................................14

      B.     A Majority of the Board Faces a Substantial Likelihood of Personal Liability............................................................................................17

      C.     Defendant Bradley Was Also Conflicted Due to His Employment at Forterra............................................................................................19

      D.     Defendant McDonnough's Personal Complicity Was Adequately Alleged..........20

      E.     A Majority of the Board Made Misstatements About Forterra's Accounting Misstatements and Lack of Reporting Controls Despite Red Flags .................................................................................................20

CONCLUSION...................................................................................................25

## TABLE OF AUTHORITIES

Page

CASES

*Atlantic Marine Construction Co. v. United States District Court for Western District of Texas*,
571 U.S. 49 (2013)......................................................................................6, 7, 8, 12

*Blanco v. Banco Indus. de Venez., S.A.*,
997 F.2d 974 (2d Cir. 1993)........................................................................................10

*Butorin on behalf of KBR Inc. v. Blount of KBR Inc. v. Blount*,
106 F. Supp. 3d 833 (S.D. Tex. 2015) ....................................................................7, 12

*Club Assistance Program, Inc. v. Zukerman*,
598 F.Supp. 734 (N.D. Ill. 1984) ..............................................................................10

*Georgia Mobile Dental, LLC v. Napper*,
No. CV 18-269-SDD-EWD, 2018 WL 6037527
(M.D. La. Nov. 16, 2018) ..........................................................................................12

*Harris v. Carter*,
582 A.2d 222 (Del. Ch. 1990).....................................................................................13

*Herman & MacLean v. Huddleston*,
459 U.S. 375 (1983)....................................................................................................17

*Holzman v. Guoqiang Xin*,
No. 12-cv-8405 (AJN), 2015 WL 5544357
(S.D.N.Y. Sept. 18, 2015) ............................................................................................9

*In re Abbott Labs. Derivative S'holders Litig.*,
325 F.3d 795 (7th Cir. 2003) .................................................................................22, 23

*In re Bear Stearns Cos., Inc. S'holder Litig.*,
No. CIV.A. 3643-VCP, 2008 WL 959992
(Del. Ch. Apr. 9, 2008) ..............................................................................................13

*In re Cendant Corp., Deriv. Action Litig.*,
96 F. Supp. d 399, 400 (D.N.J. 2000) ........................................................................18

*In re Enron Corp. Sec., Derivative & "ERISA Litig."*,
258 F.Supp.2d 576 (S.D. Tex. 2003) ...........................................................................9

*In re InfoUSA, Inc. S'holders Litig.*,
953 A.2d 963 (Del. Ch. 2007)................................................................................21, 24

**Page**

*In re Oxford Health Plans, Inc.*,
  192 F.R.D. 111 (S.D.N.Y. 2000) ...................................................................14, 15

*In re Plains All Am. Derivative Litig.*,
  No. CV H-15-3632, 2016 WL 6634929
  (S.D. Tex. Nov. 8, 2016)...........................................................................................7

*In re The Student Loan Corp. Derivative Litig.*,
  No. C.A. 17799, 2002 WL 75479
  (Del. Ch. Jan. 8, 2002) ..........................................................................................19

*In re Veeco Instruments, Inc. Sec. Litig.*,
  434 F. Supp. 2d 267 (S.D.N.Y. 2006).....................................................................18

*Insurance Co. of N. Am. v. Ozean/Stinnes-Linien*,
  367 F.2d 224 (5th Cir. 1966) ..................................................................................11

*King v. Terwilliger*,
  No. CIV.A. H-12-2182, 2013 WL 708495
  (S.D. Tex. Feb. 26, 2013).......................................................................................25

*Koster v. (Am.) Lumbermens Mut. Cas. Co.*,
  330 U.S. 518 (1947).................................................................................................9

*Maher v. Zapata Corp.*,
  714 F.2d 436 (5th Cir. 1983) ..................................................................................13

*Malone v. Brincat*,
  722 A.2d 5 (Del. 1998) ...........................................................................................21

*Marhart, Inc. v. CalMat Co.*,
  Civ.A. No. 11,820, 1992 WL 82365
  (Del. Ch. Apr. 22, 1992) .........................................................................................21

*McCall v. Scott*,
  239 F.3d 808 (6th Cir. 2001), *amended on denial of reh'g*, 250 F.3d 997 (6th
  Cir. 2001) ...............................................................................................................23

*MICH II Holdings LLC v. Schron*,
  No. CIV.A. 6840-VCP, 2012 WL 2499507
  (Del. Ch. June 29, 2012) .........................................................................................13

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
  135 S. Ct. 1318 (2015).............................................................................................17

Page

*Path to Riches, LLC on behalf of M.M.T. Diagnostics of M.M.T. Diagnostics*
   *(2014), Ltd. v. CardioLync, Inc.*,
   290 F. Supp. 3d 280 (D. Del. 2018)........................................................................9

*Piper Aircraft Co. v. Reyno, et al.*,
   454 U.S. 235 (1982)..............................................................................................9

*Quixtar Inc. v. Signature Mgmt. Team, LLC*,
   315 S.W.3d 28 (Tex. 2010)...................................................................................9

*Rales v. Blasband*,
   634 A.2d 927 (Del. 1993) ..............................................................................13, 19

*Rich ex rel. Fuqi Int'l, Inc. v. Yu Kwai Chong*,
   66 A.3d 963 (Del. Ch. 2013)...............................................................................22

*Triple M Hous. Ltd. v. Biomass Combustion Sys. Inc.*,
   No. CV 09-40188-FDS, 2010 WL 11579369
   (D. Mass. May 20, 2010) ......................................................................................9

*Weber v. PACT XPP Techs., AG*,
   811 F.3d 758 (5th Cir. 2016) ...............................................................................7

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
   §78u-6 .................................................................................................................5

18 U.S.C.
   §1514A.................................................................................................................5

28 U.S.C.
   §1404(a) ...................................................................................................... *passim*

Del. Code Ann. Title 8
   §102(b)(7) ..........................................................................................................23

Fedeal Rules of Civil Procedure
   Rule 12(b)(3)........................................................................................................8
   Rule 12(b)(6)..................................................................................................1, 8
   Rule 23.1..............................................................................................................1

## INTRODUCTION

Plaintiff Nancy G. Maloney ("Plaintiff"), responds to the Motion to Dismiss for *Forum Non Conveniens*, Failure to Make a Pre-suit Demand Pursuant to Rule 23.1, and Failure to State a Claim Pursuant to Rule 12(b)(6) (the "Motion," ECF No. 19) filed by nominal party Forterra, Inc. ("Forterra" or the "Company") and its officers and directors named as "Defendants" as follows.[1]

First, as to the Forum Selection Clause ("FSC") in Forterra's Certificate of Incorporation, Defendant's own authority provides that dismissal is improper.  Even if the FSC did apply, enforcement would have required that this Court analyze whether to transfer this action, brought properly in this District under its diversity jurisdiction, to the District of Delaware under 28 U.S.C. §1404(a), not whether to dismiss it.  Cognizant that such transfer would be improper because the relevant documents, witnesses and evidence remain in this District where there is also a related securities class action proceeding to trial, *as Defendants themselves have argued repeatedly in federal court proceedings*, Defendants improperly seek a dismissal instead.  *See* Ex. B (App. at pp. 35-42) ("Venue in the Northern District of Texas is proper" over related claims "because a substantial part of the events or omissions giving rise to the claim occurred" there, "Forterra's headquarters are there," and "defendants are subject to personal jurisdiction there").[2]

Second, contrary to Defendants' arguments, demand upon the Forterra Board, as of the date of the filing of this action, would have been futile.  When a shareholder challenges a decision of the

---

[1]   As detailed in Plaintiff's Verified Shareholder Derivative Complaint for Breach of Fiduciary Duty, Constructive Fraud, Corporate Waste and Unjust Enrichment (ECF. No. 1, "Complaint," at ¶¶9-22), "Defendants" include Jeffrey K. Bradley ("Bradley"), W. Matthew Brown ("Brown"), Lori M. Browne ("Browne"), William Kerfin ("Kerfin"), Kyle S. Volluz ("Volluz"), Kevin Barner ("Barner"), Robert Corcoran ("Corcoran"), Samuel D. Loughlin ("Loughlin"), Clint McDonnough ("McDonnough"), John McPherson ("McPherson"), Chris Meyer ("Meyer"), Chadwick S. Suss ("Suss") and Grant Wilbeck ("Wilbeck").  All "¶_" references are to the Complaint.

[2]   Plaintiff submits herewith seven exhibits in support of her oppositions to Defendants' motions to dismiss.  As detailed herein, as each is a matter of public record, whether filed with the SEC or another court, the Court can take judicial notice of them.

board of directors of a Delaware corporation such as Forterra, a court must determine whether a reasonable doubt has been raised as to: (i) disinterestedness and independence of a majority of the members of the board of directors; or (ii) as to whether the challenged transaction was otherwise the product of a valid exercise of business judgment. This two-pronged approach is disjunctive, meaning that if either prong is satisfied, demand is excused. Here, the Complaint focuses on the conglomeration of several disparate businesses by Forterra's controlling shareholder, Lone Star Fund IX (U.S.), L.P. (along with its related entities, "Lone Star"), and its associate Hudson Advisors L.P. (along with its related entities, "Hudson"); their failure to effectively integrate those disparate businesses; their straddling of those disparate businesses – now called Forterra – with an insurmountable debt load; and their failure to put in place effective accounting practices or reporting controls, resulting in Forterra publishing falsified financial statements during fiscal 2017 that have now exposed it to millions of dollars in potential liability to investors and regulators. Defendants' contention that it does not matter that a majority of Forterra's ten directors are also long-term executives of Lone Star and/or Hudson (or both), which directed the misconduct, can be rejected. Tellingly, Defendants fail to address the Complaint's allegation that they themselves admitted in a filing they caused Forterra to make with the Securities and Exchange Commission ("SEC") that "directors who . . . are employed by affiliates or related parties of Lone Star" are *per force* not independent. Defendants even claim that Defendant Bradley, Forterra's Chief Executive Officer ("CEO"), who signed all of the falsified financial reports and, along with a majority of the Board, and is a defendant in the related *Forterra* securities fraud class action pending in this District, *i.e. In re Forterra Inc. Sec. Litig.*, N.D. Tex. No. 3:18-cv-01957-K (the "Fed. Sec. Action"), somehow could have "impartially considered a [presuit] demand." They are wrong. Demand was futile. Accordingly, Defendants' Motion should be denied.

- 2 -

## RELEVANT FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In March 2015, controlling shareholder Lone Star purchased the Company's predecessor from HeidelbergCement AG in a highly leveraged buyout.  ¶35.  Before selling the Company to Lone Star, HeidelbergCement AG had unsuccessfully attempted to conduct an IPO to raise capital to pay down the Company's already high debt load.  *Id.*  Upon acquiring the assets, Lone Star stripped off all but the business of manufacturing pipe and precast products, and renamed the remaining entity Forterra.  ¶¶34-43.  Lone Star, a global investment firm with interests in all sorts of other industrial companies, then caused Forterra to make a series of disparate acquisitions of companies with far different business models and accounting practices.  ¶39.  To make all of these acquisitions, Lone Star loaded Forterra up with even more debt, tripling the debt it had when acquired from HeidelbergCement AG.  ¶42.

Following the October 2016 IPO Lone Star caused Forterra to undertake, Defendants admitted in Forterra's SEC filings that due to Lone Star's continued 70% equity stake in Forterra, it remained a "controlled company" and as such was not required to "have a majority of independent directors on its board of directors."  ¶43.  Forterra's 2018 Annual Proxy Statement also "concedes that 'directors who . . . are employed by affiliates or related parties of Lone Star' are not independent."  ¶69(a).  Indeed, as detailed at ¶¶13-22, 66 and 69, of the ten directors composing the Board at the time this suit was commenced, "a majority" were then "employed by Lone Star" and/or Hudson, including Defendants Meyer, Volluz and Corcoran, and non-party Forterra Board Members Richard "Chip" Cammerer, Jr. ("Cammerer"), Dominic LaValle ("LaValle") and Chad Lewis ("Lewis").

The Complaint alleges that between March 2017 and August 2017 (the "Relevant Period"), Defendants caused Forterra to materially overstate its publicly reported financial results in violation of Generally Accepted Accounting Principles ("GAAP"); make other materially false and misleading

- 3 -

statements and omissions; facilitate the false financial reporting by operating without effective internal controls; file false and misleading statements with the SEC; and permit certain of its current and former executives to profit from this misconduct by pegging the payment of their cash bonuses to falsely reporting otherwise unattainable quarterly and annual financial targets. ¶¶1, 44-52.

The Complaint alleges that Defendants' misconduct and self-dealing has resulted or threatened to result in hundreds of millions of dollars of damages to Forterra. ¶¶2, 62-66. It further alleges that the Company's senior executives were incentivized to issue materially false and misleading financial reports and statements to justify paying themselves outsized cash bonuses. ¶¶1-2, 64, 69(j), 85. As a result of Defendants' misconduct, the Company has been named as a primary defendant in a costly and expensive class action lawsuit for violations of the federal securities laws. ¶¶2, 62, 69(g), (l). Forterra has also been named as a defendant in a whistleblower retaliation lawsuit brought by a former senior executive expressly accusing it of intentionally falsifying its financial reports, which will make the securities claims harder for Forterra to defend. ¶¶2, 69(d) and (g).

By causing or permitting the accounting misstatements, Defendants: (i) caused Forterra to issue materially false and misleading financial reports and to file materially false and misleading financial statements with the SEC; (ii) deprived Forterra's shareholder owners of their right to vote at the 2017 annual general meeting of shareholders ("AGM") based on accurate and complete reports of the Company's actual financial performance; (iii) exposed Forterra to millions of dollars in potential liability to its investors, civil litigants and regulators; and (iv) caused Forterra to improperly pay excessive severance payments to a departing executive by permitting him to resign instead of being fired for cause. ¶¶1, 3, 44-52, 57, 62-66, 69(f), (h), 82, 86.

On May 15, 2017, Defendants caused Forterra to disclose that its previously-issued financial reports for the quarter ended March 31, 2017 contained millions of dollars in accounting

improprieties, the correction of which revealed that the Company "***had achieved no organic growth during the quarter***," and that there were additional defects in Forterra's internal controls.  ¶¶55-56. In May 2017, Executive Vice President and Chief Operating Officer, Scott Leonard, suddenly and without explanation resigned; followed soon in July 2017 by former Chairman of the Board, Defendant Loughlin; Defendant Brown in September 2017; and former board members Defendants Barner, Wilbeck and Suss suddenly in March/April 2018.  ¶¶53, 58, 63, 66.  On August 10, 2017 and again on March 7, 2018, Defendants caused Forterra to admit to even more defects in its internal controls, and that the Company had again achieved "***no organic growth***" in the quarter ended June 30, 2017.  ¶¶59-60, 65.

Meanwhile, on February 21, 2018, Raymond Vuoncino ("Vuoncino"), the former Vice President of Operations of Forterra's wholly-owned U.S. Pipe Fabrication subsidiary, filed a detailed whistleblower lawsuit in the District of New Jersey, alleging violations of the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010, 15 U.S.C. §78u-6 *et seq.*, and the Sarbanes-Oxley Act of 2002, 18 U.S.C. §1514A *et seq.* against Forterra and Defendants Bradley and Kerfin. ¶64.  According to Mr. Vuoncino, in connection with calculating Forterra's 4Q16 and FY16 financial results reported on March 29, 2017, Defendants caused Forterra to overstate U.S. Pipe's 4Q16 and FY16 reported profits by causing one Pipe and Precasting division to order product from another Pipe and Precasting division at the end of the quarter, paid for by an intra-division "rebate" that was not properly accounted for, to build excess inventory "just to report additional profits in order to meet" otherwise unattainable "projected and monthly quarterly" sales goals.  *Id.*  Mr. Vuoncino further alleged that Defendants had begun paying themselves cash bonuses on those falsified results "on a monthly basis with eighty percent (80%) of the bonus amount calculated on performance versus financial goals."  *Id.*  Mr. Vuoncino's action is ongoing.  *See Vuoncino v. Forterra, Inc., et al.*, No. 18-cv-02437 (D.N.J. Feb. 21, 2018).

On July 31, 2018, Plaintiff filed this shareholder derivative action against Forterra's faithless fiduciaries.  ¶¶4, 69-70.  In the Complaint, Plaintiff alleges that during the Relevant Period, Defendants caused Forterra to materially overstate its publicly reported financial results in violation of GAAP; make other materially false and misleading statements and omissions; facilitate the false financial reporting by operating without effective internal controls; file false and misleading statements with the SEC; and permit certain of its current and former executives to profit from this misconduct by pegging the payment of their cash bonuses to falsely reporting otherwise unattainable quarterly and annual financial targets.[3]  ¶¶1, 44-52.

## ARGUMENTS

## I.   THE FORUM SELECTION CLAUSE IS NOT ENFORCEABLE

Defendants' opening argument is that "[i]n *Atlantic Marine Construction Co. v. United States District Court for Western District of Texas*, 571 U.S. 49, 60 (2013) ["*Atlantic Marine*"], the U.S. Supreme Court held that a contractual forum-selection clause should be given 'controlling weight in all but the most exceptional cases,' and that 'the appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens*,'" and that "[b]ecause the forum-selection clause here requires adjudication in a Delaware court, the Complaint should be dismissed under the doctrine of *forum non conveniens*."  Mot. at 2.  They are wrong. *Atlantic Marine* negates the very relief sought here: dismissal.  *See* 571 U.S. at 54 (dismissal is proper "only when venue is 'wrong' or 'improper'").  Venue is proper in this District because this is where "a substantial part of the events or omissions giving rise to the claim occurred."  *Id.* at 55 (citing § 1391(a)(2)).  To be sure, "[w]hether venue is 'wrong' or 'improper' depends exclusively on whether the court in which the case was brought satisfies the requirements of federal venue laws, and

---

[3]   Defendants' claim that Plaintiff lacks standing due to the contemporaneous ownership requirement is addressed in her Opposition to Defendant Kerfin's Motion to Dismiss filed herewith.

those provisions say nothing about a forum-selection clause." *Id.* at 56. Instead, the Supreme Court in *Atlantic Marine* determined that FSCs be enforced – if at all – through motions to transfer brought under 28 U.S.C. § 1404(a), which provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court *may transfer* any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." *Id.* at 54-61. As detailed below at §II.C, all relevant §1404(a) factors militate against transferring this action and Defendants cannot show not otherwise.

Instead, attempting to avoid *Atlantic Marine*'s mandate altogether, Defendants cited to the Firth Circuit's decision in *Weber v. PACT XPP Techs., AG*, 811 F.3d 758, 768 (5th Cir. 2016) where a *forum non conveniens* dismissal was granted. But *Weber* is inapposite because there, the court's choice of forums was between the Western District of Texas and Germany – and it could not transfer the case to Germany under §1404(a) or any other statute.[4]

When *Atlantic Marine*'s mandate is applied, Defendants' *forum non conveniens* argument fails. First, while §1404(a) governs transfers within the federal court system, even where a FSC provides only a state forum, the clause is still enforced through the doctrine of *forum non conveniens*. *See Atlantic Marine*, 571 U.S. at 61 ("because both §1404(a) and the *forum non conveniens* doctrine from which it derives entail the same balancing-of-interests standard, courts should evaluate a forum-selection clause pointing to a nonfederal forum in the same way that they

---

[4]    Notwithstanding Defendants' citation to non-binding trial court orders from outside of this District (Mot. at p. 8, n. 8), in the Fifth Circuit, "[t]he appropriate way to enforce a forum selection clause pointing to another federal forum is through a motion to transfer venue pursuant to 28 U.S.C. §1404(a)," as "in such cases, Congress has replaced the traditional remedy of outright dismissal with transfer." *Butorin on behalf of KBR Inc. v. Blount*, 106 F. Supp. 3d 833, 836 (S.D. Tex. 2015). The trial court order in *In re Plains All Am. Derivative Litig.*, No. CV H-15-3632, 2016 WL 6634929 (S.D. Tex. Nov. 8, 2016) is distinguishable, because there "the spill giving rise to th[e] suit happened in California" and not Texas. *Id.* at *5. Here, by contrast, Forterra's accounting misstatements and other false financial reporting occurred at its Texas headquarters and the FSC is anything but unambiguous as it was there.

evaluate a forum-selection clause pointing to a federal forum.").[5]  Significantly, the FSC at issue

here provided only for a jurisdictionally appropriate state or federal forum by its own terms:

> Unless the Corporation consents in writing to the selection of an alternative forum, to the fullest extent permitted by law, ***and subject to applicable jurisdictional requirements***, the sole and exclusive forum for any stockholder . . . to bring internal corporate claims (as defined below) shall be a state court located within the State of Delaware (or, if no state court located within the State of Delaware has jurisdiction, the Dist. of Del.).  For purposes of this Article XIII, "internal corporate claims" means claims, including claims in the right of the Corporation: (a) that are based upon a violation of a duty by a current or former director, officer, employee or stockholder in such capacity, or (b) as to which the DGCL confers jurisdiction upon the Court of Chancery.  If any action the subject matter of which is within the scope of this Article XIII is filed in a court other than a state court located within the State of Delaware (or, if no state court located within the State of Delaware has jurisdiction, the federal district court for the District of Delaware) (a "Foreign Action") by any stockholder (including any beneficial owner), such stockholder shall be deemed to have consented to: (a) the personal jurisdiction of the state and federal courts located within the State of Delaware in connection with any action brought in any such court to enforce this Article XIII and (b) having service of process made upon such stockholder in any such action by service upon such stockholder's counsel in the Foreign Action as agent for such stockholder.

*See* Ex. 1 to Defendants' Motion (ECF No. 20 at 11).  Plaintiff, as the "master of [her] complaint"

selected a federal court forum and at least one Defendant has conceded her diversity jurisdiction

allegations are valid.  *See* Ex. A at 3-4.  At worst, enforcement of the FSC would have mandated a

***transfer*** to the District of Delaware under 28 U.S.C. §1404(a), not a dismissal, and that is presuming

---

[5]   In a tacit recognition that dismissal under Rule 12(b)(3) would be improper, Defendants "alternatively move to enforce the [FSC] under Rule 12(b)(6)."  *See* Mot. at p. 8, n. 9.  Defendants, however, erroneously claim that "[w]hile *Atlantic Marine* confirms that *forum non conveniens* is an appropriate mechanism for enforcing clauses designating nonfederal forums, the Court left open whether dismissal under Rule 12(b)(6) is also appropriate."  *Id.*  This is incorrect.  *Atlantic Marine* held that "[e]ven if a defendant could use Rule 12(b)(6) to enforce a forum-selection clause, that would not change our conclusion[] that . . . §1404(a) and the *forum non conveniens* doctrine provide appropriate enforcement mechanisms" and that "a motion under Rule 12(b)(6), unlike a motion under §1404(a) or the *forum non conveniens* doctrine, may [necessitate] a jury trial on venue if issues of material fact relating to the validity of the forum-selection clause arise."  571 U.S. at 62 and n.4.  Here, Plaintiff can show that the FSC is anything but unambiguous on its face and that Defendants are overreaching by seeking dismissal of this action.

the §1404(a) factors warranted transfer, though Defendants admit they do not. *See* Ex. B –

Defendants' motion to transfer the *Vuoncino* action here. App. at 35-42.

> **A.     Having Successfully Argued for Texas as the Proper Forum, Defendants Cannot Now Stand on the FSC to the Detriment of Plaintiff's Interst in Prosecuting These Claims Here**

It is well settled that, when faced with a *forum non conveniens* motion, a court should grant

deference to a plaintiff's choice of forum. *See Piper Aircraft Co. v. Reyno, et al.*, 454 U.S. 235, 241,

265-266 (1982) (there is "ordinarily a strong presumption in favor of the plaintiff's choice of forum"

and plaintiff's choice "should rarely be disturbed"). "As a general matter, a plaintiff is master of its

complaint, and may prosecute a matter in any forum in which the jurisdiction and venue

requirements are met."[6]*Triple M Hous. Ltd. v. Biomass Combustion Sys. Inc.*, No. CV 09-40188-

FDS, 2010 WL 11579369, at *1 (D. Mass. May 20, 2010); *In re Enron Corp. Sec., Derivative &*

*"ERISA Litig."*, 258 F.Supp.2d 576, 650 n.32 (S.D. Tex. 2003) ("plaintiff is the master of its

complaint"). While, *forum non conveniens* determinations are "committed to the sound discretion of

the trial court . . . [and] may be reversed only when there has been a clear abuse of discretion,"

(*Reyno*, 454 U.S. at 257), federal courts deny *forum non convenience* findings unless the plaintiff's

chosen forum would "establish . . . oppressiveness and vexation to a defendant . . . out of all

proportion to plaintiff's convenience," or where the "chosen forum [is] inappropriate because of

considerations affecting the court's own administrative and legal problems." *Koster*, 330 U.S. at

---

[6]     While the Supreme Court has counseled courts should afford lesser deference to a plaintiff's choice of forum in derivative actions (*see Koster v. (Am.) Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 524-25 (1947)), "[o]bviously, this does not mean that a plaintiff's choice of forum deserves no deference." *Quixtar Inc. v. Signature Mgmt. Team, LLC*, 315 S.W.3d 28, 31 (Tex. 2010); *see also Path to Riches, LLC on behalf of M.M.T. Diagnostics (2014), Ltd. v. CardioLync, Inc.*, 290 F. Supp. 3d 280, 288 (D. Del. 2018) (derivative plaintiff's chosen forum is entitled to some deference in *forum non conveniens* analysis); *Holzman v. Guoqiang Xin*, No. 12-cv-8405 (AJN), 2015 WL 5544357, at *7 (S.D.N.Y. Sept. 18, 2015) (same). This is especially true in a case where, as here, Plaintiff has brought the action in the District where Forterra is headquartered, where the documents and witnesses are located, and where the related federal securities class action is proceeding apace to trial.

- 9 -

524.   Moreover, the plaintiff's choice of forum clearly weighs more heavily in the *forum non conveniens* context than it does in the transfer of venue context, where it is merely one factor to be considered.  *See, e.g., Club Assistance Program, Inc. v. Zukerman*, 598 F.Supp. 734, 736 (N.D. Ill. 1984).

### B.     The FSC at Issue Here Is Not Mandatory Because Delaware Courts Lack Personal Jurisdiction Over All Defendants

FSCs that employ the "nonmandatory words the parties chose to express their agreement" in, are "properly construed as a permissive consent-to-jurisdiction provision, and not a mandatory and exclusive forum selection clause."  *Blanco v. Banco Indus. de Venez.*, S.A., 997 F.2d 974, 979 (2d Cir. 1993).  Here, the FSC *that Defendants authored* and seek to enforce is non-mandatory because by its own terms because it: (i) does not apply unless all defendants are subject to personal jurisdiction in Delaware; (ii) expressly provides that derivative actions like this may be filed both in state and federal court; and (iii) expressly provides that an "action the subject matter of which is within the scope of this" FSC may be "filed in a court other than a state court located within the State of Delaware."  *See* Ex. 1 to Defendants' Motion (ECF No. 20 at 11).  As such, where, as here, Plaintiff filed this action in the District where Forterra is headquartered *and Defendants themselves have repeatedly argued in this District and elsewhere and elsewhere that venue is only proper in this District over related claims arising out of the same or related course of conduct*, the FSC is non-mandatory.  *See* Ex. E (App. at 171) herein (stipulated order transferring the federal securities class action claims related to these claims to this District with Defendants expressly "agree[ing] that [the §1404(a)] factors, as applied to these Related Cases, weigh in favor of transfer to the Northern District of Texas – Dallas Division . . . for the convenience of the parties and witnesses and in the interests of justice," including "(1) the convenience of witnesses; (2) the convenience of the parties; (3) the location of relevant documents and the relative ease of access to sources of proof; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling

witnesses; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded the plaintiff's choice of forum; and (9) trial efficiency and the interests of justice."); and Ex. B ("Specially Appearing Defendant Forterra, Inc.'s Brief in Support of its Motion to Dismiss" filed in *Vuoncino v. Forterra, Inc.*, *et al*, D.N.J. No. 2:18-cv-02437-CCC-MF, ***wherein Defendants argued in detail at App. 35-42 how "the §1404 factors weigh[ed] in favor of transfer" to the Northern District of Texas "because a substantial part of the events or omissions giving rise to the claim occurred in the Northern District of Texas" and how all of the private and public §1404(a) factors demonstrated this District was a more convenient forum***).[7]

## C.     The §1404(a) Factors Militate Against a Transfer Based On *Forum Non Conveniens*

In the *Vuoncino* action, which involved essentially the same misconduct as this action, Defendants have already conceded that venue is proper in the Northern District. *See* Ex. B (App. at 35-42) ("Venue in the Northern District of Texas is proper . . . because a substantial part of the events or omissions giving rise to the claim occurred in the Northern District of Texas. Forterra's headquarters are there, Bradley resides there, Plaintiff attended meetings there, and Plaintiff received multiple calls from Forterra's headquarters related to the activities alleged, making the Northern District of Texas a proper venue for this claim. . . .  Furthermore, all defendants are subject to personal jurisdiction there, as Forterra and Bradley reside there and Kerfin would likely be subject to personal jurisdiction in Texas but, in any event, Kerfin waives any potential argument to personal jurisdiction there.").  As such, this Court need only consider the public factors that the "Fifth Circuit has adopted . . . for the determination of whether a Section 1404(a) venue transfer is for the

---

[7]     Indeed, the Fifth Circuit Court of Appeals has held that when a defendant successfully obtained a transfer to another district it claimed was "more convenient," only to later claim that the transferee district was "not the most appropriate place for a trial on the merits and, upon such contention, [sought] to have the [claims] dismissed," that party "may not, as it attempts to do here, 'so trifle with the judicial process.'  This is something which the courts will not tolerate."  *Insurance Co. of N. Am. v. Ozean/Stinnes-Linien*, 367 F.2d 224, 226-227 (5th Cir. 1966).

convenience of the parties and witnesses and is in the interest of justice." *Georgia Mobile Dental, LLC v. Napper*, No. CV 18-269-SDD-EWD, 2018 WL 6037527, at *9 (M.D. La. Nov. 16, 2018).[8] Specifically, the "(a) administrative difficulties flowing from court congestion; (b) local interest in having localized controversies decided at home; (c) interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; (d) the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and (e) the unfairness of burdening citizens in an unrelated forum with jury duty." *Blount*, 106 F. Supp. 3d at 837. Notably, here, Plaintiff – whose citizenship is diverse from that all Defendants – seeks not only a Texas, but a federal forum, and is thus entitled to the procedural benefits of her selection.

Moreover, Defendants have already persuasively demonstrated in their arguments made in *Vuoncino* that all of the §1404(a) factors militate in favor of denying their *forum non conveniens* motion filed in this case. *See* Ex. B (App. at 35-42). First, as Defendants argued, "[a] judgment issued in Texas is likely to be more easily enforceable than one from [Delaware] because both [almost all of the Defendants] and Forterra are located in Texas." *Id.* (App. at 41) and ¶¶9-22 (demonstrating almost all Defendants reside in Texas). Likewise, as they argued in *Vuoncino*, here too "[p]ractical considerations would make the trial easier, more expeditious, and inexpensive in Texas, as it is the more convenient forum for the majority of important witnesses, and the parties would be able to compel their attendance at trial." *See* Ex. B (App. at 41). Likewise, "[t]he administrative difficulty in the two fora, particularly related to court congestion, weighs in favor of" this District where the median time from filing of a civil complaint to trial in the Northern District of

---

[8]    Though *Atlantic Marine* counsels that where there is a "valid" FSC, "a district court may consider arguments about public-interest factors only," it further holds that "it is 'conceivable in a particular case' that the district court 'would refuse to transfer a case notwithstanding the counterweight of a forum-selection clause.'" 571 U.S. at 64. This is such an "unusual case" because with the relevant documents, witnesses and the related Fed. Sec. Action pending in this District, all transferring this case to Delaware would achieve is to inconvenience the prosecution of these claims.

Texas is 28 months (placing it 30th nationally), compared with 28.7 months in the District of Delaware (placing it 35th nationally). *Id.* and Ex. C (National Judicial Caseload Profile as of Sept. 30, 2018) (App. at 69 and 89). Further, the mere fact that Delaware law applies does not favor *forum non conviens* in favor of a Delaware forum where, as here, "the claims asserted in the Complaint only require the application of well-settled principles of Delaware law." *In re Bear Stearns Cos., Inc. S'holder Litig.*, No. CIV.A. 3643-VCP, 2008 WL 959992, at *6 (Del. Ch. Apr. 9, 2008); *MICH II Holdings LLC v. Schron*, No. CIV.A. 6840-VCP, 2012 WL 2499507, at *11 (Del. Ch. June 29, 2012) (because "this is not a case raising novel or important issues of Delaware law," "the New York court is capable of rendering prompt and complete justice."). Indeed, the Fifth Circuit has condoned the prosecution of shareholder derivative actions applying Delaware law in the federal District Courts. *See Maher v. Zapata Corp.*, 714 F.2d 436, 467 (5th Cir. 1983). Further still, because the Fed. Sec. Action arises out the same accounting scheme and misconduct perpetrated by Defendants at Forterra while under their stewardship, there is a significant risk of inconsistent factual findings if essentially the same claims are litigated by two courts in two different jurisdictions. Moreover, it is not clear that all Defendants are subject to personal jurisdiction in Delaware (and as demonstrated in Ex. B, they are apt to seek dismissal on that basis (App. at 31-35)). Therefore, because the relevant §1404(a) factors favor the Northern District of Texas' retention of venue Defendants' *forum non conveniens* motion should be denied.

## II.    THE COMPLAINT ADEQUATELY ALLEGES DEMAND FUTILITY

A demand upon the board of directors is excused where the complaint raises a "reasonable doubt" that a majority of the board could properly exercise its business judgment in considering a demand for action. *Rales v. Blasband*, 634 A.2d 927, 933 (Del. 1993). The Court should not dissect the Complaint into components nor rely on any one factor in the demand futility analysis, but instead, must take into account the totality of the circumstances. *Harris v. Carter*, 582 A.2d 222,

229 (Del. Ch. 1990); *see also In re Oxford Health Plans, Inc.*, 192 F.R.D. 111, 118 (S.D.N.Y. 2000) (finding demand futile upon considering the totality of the circumstances).

Here, a pre-suit demand is futile because a majority of Forterra directors, on the date this suit was filed, were employed by Forterra's controlling shareholder, Lone Star, along with its affiliate Hudson, which caused the Company to misstate its accounting and to operate without the internal controls required to prevent the accounting misstatements.  Indeed, Defendants themselves have admitted in a filing with the SEC that "directors who . . . are employed by affiliates or related parties of Lone Star" are *per force* not independent.[9]

### A.   A Majority of the Board Was Employed by and the Entire Board Was Hand-Selected by Controlling Shareholder Lone Star and its Affiliate Hudson

Lone Star and its affiliate Hudson has controlled Forterra at all relevant times. ¶¶34-43.  Due to its 100% stock ownership before the IPO and 70% ownership afterwards, Defendants have conceded to Lone Star's control.  ¶69(a).  At the time the Complaint was filed, six of the ten directors then seated on the Forterra Board were employed by Lone Star and/or Hudson, including Defendants Volluz (who had also served as the managing director of Hudson since January 2015), Corcoran (who had also served as a Senior Advisor – Global Operations for Hudson since January 2016), and Meyer (who has also served as a managing director of Hudson since February 2015, in which capacity he has oversight responsibility for a number of Lone Star's private equity investments, including Forterra, and also assists with the due diligence and underwriting of potential operating company investments ); and non-parties Cammerer (who has also served as a managing director of Hudson since January 2016), LaValle (who has also served as a managing director of Hudson since January 2018, had previously served as a director of Hudson from July 2015 through

---

[9]   At pp. 12-25 of their Motion, Defendants challenge some but not all of the Complaint's demand futility allegations detailed at ¶69.  The remaining demand futility arguments are thus conceded.

- 14 -

December 2017, and was then responsible for sourcing, executing and managing Hudson's private equity investments), and Lewis (who has also served as a Vice President of Hudson responsible for executing and managing Hudson's private equity investments since June 2015 and who previously served as an associate of Hudson from January 2015 to June 2015). ¶¶9-22, 34-43 and 66. While the other four directors were not employed directly by the controlling shareholders, they were hand-picked by them to serve on the Board in October 2016, before the IPO, when Lone Star still owned 100% of Forterra's stock, including Defendants Bradley (also Forterra's CEO since September 2015), McDonnough, McPherson, and Sarrazin. *Id.*

Defendants' incorrectly argue that the Complaint lacks "particularized factual allegations that the [controlling] stockholder has a disabling interest—*i.e.*, would receive a material benefit or suffer a material detriment not shared by other stockholders." Mot. at 12. In fact, the Complaint alleges that after the Company's prior owner tried unsuccessfully to take it public, Lone Star purchased it, reorganized it (sloughing off certain businesses and conglomerating certain other new business it caused Forterra to acquire), saddled it with an insurmountable debt load, failed to effectively integrate the accounting systems of the vast number of quickly acquired companies, caused it to operate with defective internal controls and thus caused it to misstate its accounting. ¶¶34-43. Likewise, in his action, Mr. Vuoncino expressly alleged that he "witnessed and heard first hand a strong desire on Forterra senior management's part to accelerate and inflate earnings" and describes how he "observed a disturbing push to accelerate/recognize quarterly 'revenues', which would inflate net earnings, including directions from Bradley and Kerfin (after Forterra's October, 2016 Initial Public Offering . . .) to book everything possible at quarter ends." *See Vuoncino* D.N.J. No. 18-cv-02437-CCC-MF, ECF. No. 1 at ¶¶17-18 (Ex. F). Similarly, as alleged in the Amended Complaint filed in the Fed. Sec. Action, which also names Lone Star as a defendant, "Lone Star acquired Forterra in April 2015 through a highly-leveraged buyout and then proceeded to cause the

Company to complete at least six significant acquisitions for more than $1 billion," "saddl[ing] Forterra with approximately $1.2 billion of long-term debt—more than triple the amount it had carried when Lone Star acquired it," and "then, a mere 18 months after having acquired Forterra, Lone Star sold off nearly 30% of its stake in the IPO for net proceeds of over $300 million." *See In re Forterra Sec. Litig.*, N.D. Tex. No. 18-cv-01957-K, ECF. No. 104 at ¶2 (Ex. G). Though Plaintiff was only required to allege a "reasonable doubt" that a majority of the Forterra Board (five directors here) could properly exercise its business judgment in considering a demand for action, the allegations in Plaintiff's Complaint alone, buttressed by the allegations in the operative complaints in *Vuoncino* and *In re Forterra Sec. Litig.*, allege far more.

Likewise, Defendants' claim that Plaintiff's Complaint fails to allege "particularized facts establishing that the stockholder would receive some benefit or suffer some detriment *that differs from what was received by other stockholders*" misses the mark. (Mot. at 20) (emphasis in original). As Forterra's sole shareholder at the time it caused Forterra to acquire all the disparate businesses, to saddle them with an untenable debt load, to fail to integrate their disparate accounting systems and to cause Forterra to operate without effective controls, resulting in it misstating its accounting, all in the lead up to taking the Company public and thus giving Lone Star a liquid market into which to sell Forterra stock is surely a benefit that no other stockholder obtained – as there were no other stockholders before Forterra's IPO. That Plaintiff's "Relevant Period" does not commence until March 2017, several months following the October 2016 IPO, is a distinction without meaning since all of the accounting misstatements and false financial filings alleged in Plaintiff's complaint were published during the Relevant Period – despite that they covered earlier periods, including those leading up to the IPO. As such, it is of no consequence that the Complaint alleges Lone Star's control and misconduct before the Relevant Period, because Lone Star's activities caused Forterra to misstate its accounting and operate without effective internal controls during the Relevant Period.

Moreover, it is of no import that Lone Star is not named as a defendant in Plaintiff's Complaint, because the fact that it employed a majority of and hand-selected all members of the Forterra Board is alleged – and because it is exposed to substantial liability in the *Fed. Sec. Action*.

**B.    A Majority of the Board Faces a Substantial Likelihood of Personal Liability**

Defendants further argue that Plaintiff has failed to adequately allege that a "majority of the directors face potential liability based on the allegations in the Complaint and would be unwilling to sue themselves." Mot. at 14-20. However, this argument fails. None of the decisions Defendants cite address a situation like this where the majority of the Defendants named in Plaintiff's complaint are also named defendants in a federal securities class action based upon the same or very similar misconduct where they face a real likelihood of liability. Defendants in the *Fed. Sec. Action* include Defendants **Bradley**, Brown, Browne, **Volluz**, Barner, **Corcoran**, Loughhlin, **McDonnough**, **McPherson**, **Meyer**, Suss, and Wilbeck, or six of the ten directors seated when Plaintiff's Complaint was filed, along with controlling shareholder Lone Star and several of its related entities. Indeed, Plaintiff pled that because "defendants Bradley, Barner, Brown, Browne, Volluz, Corcoran, Loughlin, McDonnough, McPherson, Meyer, Sarrazin, Suss and Wilbeck [were] all named as defendants in the securities fraud class action," "[i]n order to properly prosecute this lawsuit, it would be necessary for [the] directors to sue themselves and the other defendants [named in the *Fed. Sec. Action*], requiring them to expose themselves and their comrades to millions of dollars in potential civil liability and criminal or SEC sanctions," something "they will not do." ¶69(m). This is intuitively known to be true because once a material misstatement has been demonstrated, §11 of the 1933 Act embodies "Congress's decision to establish a strict liability offense promoting 'full and fair disclosure' of material information" in documents marketing stock offerings. *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 135 S. Ct. 1318, 1331 (2015); *also Herman & MacLean v. Huddleston*, 459 U.S. 375, 382 (1983) ("Section 11 [of the 1993 Act] places a relatively

minimal burden on a plaintiff," as it requires no showing of fraudulent intent, reliance or loss causation, and plaintiff need only show a material misstatement or omission in the Offering Documents to make out his *prima facie* case).

Defendants quibble about whether their breaches of fiduciary duty, corporate waste and constructive fraud have been adequately alleged, claiming Plaintiff has failed to allege "particularized facts on a director-by-director basis establishing that the directors face a **substantial** likelihood of liability." Mot. at 15 (emphasis in original). However, while Plaintiff does not allege in this action that the registration statement used to conduct Forterra's IPO contained false and misleading statements such as the plaintiffs in the *Fed. Sec. Action*, she does allege the same or similar false accounting that took place during fiscal 2016 and was reported during the Relevant Period, and she alleges the same long-standing defects in Forterra's reporting controls. As such, each of the Defendants in the *Fed. Sec. Action* – including Lone Star, which controlled the entire Forterra Board as seated at the time Plaintiff's action was commenced – had every incentive to dispute whether Forterra's 2016 financial reports contained material misstatements, including the alleged accounting errors and that Defendants were operating Forterra with defective reporting controls.

Under circumstances like these, courts routinely find that  given that the misconduct alleged in the derivative action is coterminous with the misconduct alleged in the class action securities fraud case, defendants named in the class action face a substantial likelihood of liability for breaching their fiduciary duties to the company, thus rendering a presuit demand futile. *See*, *e.g*., *In re Cendant Corp., Deriv. Action Litig.*, 96 F. Supp. d 399, 400  (D.N.J. 2000) (finding that director defendants were interested because they were defendants in "other pending class action suits arising out of the" misconduct underlying the shareholder complaint); *In re Veeco Instruments, Inc. Sec. Litig.*, 434 F. Supp. 2d 267, 275 (S.D.N.Y. 2006) (concluding that director defendant faced

substantial likelihood of liability, in part, because the court had declined to dismiss the class action securities fraud complaint against the director defendant).  Where, as here, a majority of the Board faces such liability, demand is excused.

> **C.     Defendant Bradley Was Also Conflicted Due to His Employment at Forterra**

Defendants argue that "Plaintiff's allegations as to Bradley are similarly conclusory, and her allegations that he could not have impartially considered a demand fail for all of the reasons previously discussed."  Mot. at 25.  However, the Complaint alleges that "Forterra's 2018 Annual Proxy Statement also concedes that 'directors who are members of [Forterra's] management,' such as defendant Bradley, are not independent due to their executive positions with the Company and their relationships with and dependence upon the other members of the Board for their livelihood." ¶69(b).  Not only was Defendant Bradley hand-selected by Lone Star both for his executive role and for his directorship, because Defendant Bradley was wholly dependent upon Lone Star – a defendant in the federal securities class action – for his livelihood, there is more than a reasonable doubt as to his independence from the rest of the Board, all of whom also serve at Lone Star's favor.

A director lacks independence when their decision is not "based on the corporate merits of the subject before the board . . . [but on] extraneous considerations or influences." *Rales*, 634 A.2d at 936.  One such extraneous consideration or influence is a director's "substantial financial stake in maintaining his current offices." *Id.* at 937; *In re The Student Loan Corp. Derivative Litig.*, No. C.A. 17799, 2002 WL 75479, at *3 (Del. Ch. Jan. 8, 2002) (recognizing a director lacked independence because acting on the demand would cause them to "displease a majority stockholder in a position to displace him from his lucrative CEO position").  Therefore, Defendant Bradley is not independent because acting on a demand would have jeopardized his lucrative CEO position.

**D.      Defendant McDonnough's Personal Complicity Was Adequately Alleged**

Contrary to Defendants' arguments, the Complaint adequately alleged that Defendant McDonnough is disabled from considering a pre-suit demand.  In particular, the Complaint alleges that Defendant McDonnough was, until 2015 an audit partner at Ernst & Young LLP ("E&Y") for 38 years, most recently serving as the managing partner of the firm's Dallas office, which is and has been for many years Forterra's outside auditing firm, where he was responsible for leading all day-to-day practice operations.  ¶17.  The Complaint further alleges that because "E&Y's Dallas office . . . served as Forterra's outside audit firm prior to its IPO and throughout the Relevant Period, and continues to serve as Forterra's outside audit firm despite defendants' repeated admissions of material internal control defects, the serious intentional financial falsification and whistleblower retaliation charges alleged by Vuoncino in the whistleblower retaliation action, and the fact that Forterra has now been sued for issuing false and misleading financial statements throughout its entire history as a publicly traded company in a securities class action seeking tens of millions of dollars in damages, defendant McDonnough is not independent, as [he] could not discharge his fiduciary duty to independently and disinterestedly investigate and prosecute the claims alleged herein that potentially implicate his former partners upon whom he still relies to fund his retirement."  ¶69(d).  Therefore, for the same reasons Defendant Bradley would not have jeopardized his livelihood, Defendant McDonnough is disabled from considering a pre-suit demand because it could jeopardized his retirement.

**E.      A Majority of the Board Made Misstatements About Forterra's Accounting Misstatements and Lack of Reporting Controls Despite Red Flags**

Defendants Bradley, Volluz, Corcoran, McDonnough, McPherson, Meyer and Sarrazin are interested for purposes of a demand because they face a substantial likelihood of liability for breaching their fiduciary duty of loyalty by making or permitting improper statements regarding the

Company's false financial reporting, accounting mistakes, and defective reporting controls, and by failing to exercise appropriate oversight.

First, these Defendants face a substantial likelihood of liability for causing or allowing the Company to issue false statements that included accounting mistakes and to make false statements about Forterra's reporting controls.  When directors are "deliberately misinforming shareholders about the business of the corporation, either directly or by a public statement, there is a violation of fiduciary duty." *Malone v. Brincat*, 722 A.2d 5, 14 (Del. 1998).  Importantly, "even where there is no obligation to disclose certain information, if it is volunteered, the information must be stated truthfully and candidly." *Marhart, Inc. v. CalMat Co.*, Civ.A. No. 11,820, 1992 WL 82365, at *3 (Del. Ch. Apr. 22, 1992).  "Communications that depart from this expectation . . . violate the fiduciary duties that protect shareholders.  Such violations are sufficient to subject directors to liability in a derivative claim." *In re InfoUSA, Inc. S'holders Litig.*, 953 A.2d 963, 990 (Del. Ch. 2007).

Here, these Defendants misled the public about the strength of the Company's financial reports, the accuracy of its accounting (including that it complied with GAAP), and the strength of its reporting controls.  They each signed the false and misleading 2016 Annual Report to Shareholders and the 2017 Proxy Statement issued in connection with Forterra's 2017 AGM.  ¶¶50-52.  In reality, the Company had failed to effectively integrate the various accounting systems of the many disparate companies Lone Star had caused it to acquire, the Company was not able to report pursuant to GAAP, and it had major undisclosed defects in its reporting controls, and these issues would continue to harm the Company.  *Id.*

Additionally, Defendants Bradley, Volluz, Corcoran, McDonnough, McPherson, Meyer and Sarrazin are interested for purposes of a pre-suit demand because they face a substantial likelihood of liability for breaching their fiduciary duty of loyalty by failing to exercise appropriate oversight

over the Company in light of the defective accounting and reporting controls, despite red flags indicating serious issues. A breach of the fiduciary duty of loyalty can be shown where either "(a) the directors utterly failed to implement any reporting or information system or controls, or (b) having implemented such a system of controls, consciously failed to monitor or oversee its operations thus disabling themselves from being informed of risks or problems requiring their attention." *Rich ex rel. Fuqi Int'l, Inc. v. Yu Kwai Chong*, 66 A.3d 963, 981 (Del. Ch. 2013). The failure to monitor prong can be demonstrated by "identify[ing] 'red flags,' obvious and problematic occurrences, that support an inference that the [] directors knew that there were material weaknesses in [their company's] internal controls and failed to correct such weaknesses." *Id.* at 983; *see also In re Abbott Labs. Derivative S'holders Litig.*, 325 F.3d 795 (7th Cir. 2003) (finding that specific warnings made to the company about the challenged practices constituted such obvious red flags that it must be assumed that all board members were aware of the practices).

Here, Plaintiff alleges that there were a number of red flags indicating problems with Forterra's accounting and reporting controls that would have justified earlier disclosure of the true state of affairs. For example, the Complaint alleges that:

- "Vuoncino, who previously worked at KPMG and Dow Jones and had 'over twenty-five (25) years of experience in corporate finance,' reported to defendant Kerfin at the time of his termination in retaliation for his whistleblowing activities," and that "[a]ccording to Vuoncino, in connection with calculating Forterra's 4Q16 and FY16 financial results reported on March 29, 2017, defendants caused Forterra to overstate U.S. Pipe's 4Q16 and FY16 reported profits by causing one Pipe and Precasting division to order product from another Pipe and Precasting division at the end of the quarter, paid for by an intradivision 'rebate' that was not properly accounted for, to build excess inventory 'just to report additional profits in order to meet' otherwise unattainable 'projected and monthly quarterly' sales goals." ¶64;

- "[D]efendants had begun paying themselves cash bonuses on those falsified results 'on a monthly basis with eighty percent (80%) of the bonus amount calculated on performance versus financial goals.'" *Id.*;

- "[P]rior to filing his whistleblower retaliation lawsuit, on June 6, 2017 [four months before the IPO], Vuoncino filed a complaint with the U.S. Department of Labor, Occupational Safety and Health Administration ["U.S.-DOLOSHA"], which Forterra

received notice of, alleging that he had 'engaged in protected activity, of which Forterra had knowledge, he was terminated by [Forterra and defendants Bradley and Kerfin] as a result of his protected activity and it was a determinative factor in his firing.'" 69(g); and

- "Rather than investigating Vuoncino's claims and taking action, or reporting them to the SEC and Forterra's shareholder owners, the Board did nothing, prompting the filing of Vuoncino's federal action," thereby exposing Forterra "to tens of millions of dollars in the whistleblower retaliation action and in the securities class action." *Id.*

The failure to make a full and complete disclosure regarding these financial reporting misstatements, accounting misstatements, and defective accounting and reporting controls that resulted in a negative impact to the financials of the Company so large in magnitude that it would take quarters to recover, demonstrates a lack of good faith. *McCall v. Scott*, 239 F.3d 808, 823 (6th Cir. 2001) (recognizing that the "magnitude" of wrongdoing is a factor weighing on whether the directors acted in bad faith), *amended on denial of reh'g*, 250 F.3d 997 (6th Cir. 2001). The eventual disclosures were significant enough to drop the Company's market capitalization significantly.[10]

At a minimum, Defendants McDonnough (Chair) and McPherson, members of the Board's Audit Committee during the Relevant Period during which the improper statements identified in the Complaint were made, face a substantial likelihood of liability given their heightened duties as members of that committee.  ¶69(e).  These duties included "represent[ing] the Board of Directors in discharging its responsibilities relating to the Company's accounting, financial reporting, financial practices and system of internal controls," and "review[ing] and discuss[ing] with Company's management the Company's audited consolidated financial statements included in [Forterra's] 2017 Form 10-K."   *Id.*   Despite being charged with oversight of financial controls, which these Defendants knew were adversely impacted by the lack of effective accounting and reporting

---

[10]   That Forterra's Certificate of Incorporation may have included an exculpation clause does not relieve Defendants of liability for breaches of the duty of loyalty nor for acts or omissions that are intentional, in bad faith or knowing violations of the law. Del. Code Ann. tit. 8, §102(b)(7); *Abbott*, 325 F.3d at 810-811.  This is also an affirmative defense which must be pled and proved.

controls, they failed to act or cure the Company's inadequate disclosures. Thus, they face a substantial likelihood of liability.

Likewise, the Complaint alleges that Defendants Meyer (Chair) and McPherson, who were "members of the Board's Compensation Committee, which, despite being charged under the terms of the committee's charter with 'reviewing and approving corporate goals and objectives relevant to the compensation of [Forterra's] executive officers in light of those goals and objectives, and setting compensation for [those] officers based on those evaluations,'" mischaracterized Defendant Brown's termination – who had served as the Chief Financial Officer of Forterra through September 2017 when he suddenly "resigned" just after the Company's former accounting misstatements and the full extent of the defects in its internal controls were publicly disclosed – "as a resignation for good reason pursuant to his Amended and Restated Employment Agreement [rather than a termination 'for cause',] 'thereby facilitating his walking away with more than an estimated $1 million in severance payments rather than being called upon to indemnify Forterra for the misconduct he caused the Company to undertake, defendants Meyer and McPherson are directly complicit in and potentially liable for the misconduct alleged herein and would not be disinterested in the outcome of an investigation into these claims." ¶¶53-61, 63, 69(f).

Contrary to Defendants' arguments, Plaintiff states a waste claim when "in any of the possible sets of circumstances inferable from the facts alleged under the complaint, no reasonable person could deem the received consideration adequate." *InfoUSA*, 953 A.2d at 1002. For example, plaintiffs in *InfoUSA* met this standard with "a series of related-party transactions and improper benefits" to a director "from a board that was dominated and controlled by him," which "[a] reasonable person might well consider . . . a sweetheart deal." *Id.* Here, while Defendant Brown received financial benefits, he was acting as Defendant Bradley's CFO and was doing the bidding of controlling shareholder Lone Star when he caused Forterra to issue falsified financial statements, to

make accounting mistakes and to operate with defective accounting and reporting controls – and by the time he was fired, Vuoncino had already filed a whistleblower complaint with the U.S.-DOLOSHA. Defendants Brown and Bradley, along with Lone Star, also knew at that point that they were potentially liable for the misstatements in Forterra's October 2016 IPO Registration Statement. Despite being charged with preserving Forterra's assets, Defendants failed to seek disgorgement from Defendant Brown, and instead rewarded him, to preserve his silence and to protect their own directorships. Thus, each Defendant faces a substantial likelihood of liability for corporate waste.

## CONCLUSION

Accordingly, Defendants' Motion should be denied. Alternatively, Plaintiff respectfully requests leave to amend. *See King v. Terwilliger*, No. CIV.A. H-12-2182, 2013 WL 708495, at *7 (S.D. Tex. Feb. 26, 2013).

DATED: January 22, 2019          ROBBINS GELLER RUDMAN
                                   & DOWD LLP
                                 SAMUEL H. RUDMAN
                                 MARY K. BLASY (admitted *pro hac*)


                                      */s/ Mary K. Blasy*
                                 MARY K. BLASY

                                 58 South Service Road, Suite 200
                                 Melville, NY 11747
                                 Telephone: 631/367-7100
                                 631/367-1173 (fax)
                                 srudman@rgrdlaw.com
                                 mblasy@rgrdlaw.com

                                 BALON B. BRADLEY LAW FIRM
                                 BALON B. BRADLEY (Texas Bar No.
                                 02821700)5473 Blair Road, Suite 100
                                 Dallas, TX  75231
                                 Telephone: 972/991-1582
                                 972/755-0424 (fax)
                                 balon@bbradleylaw.com

LAW OFFICES OF CURTIS V. TRINKO, LLP
CURTIS V. TRINKO
16 West 46th Street, 7th Floor
New York, NY  10036
Telephone:  212/490-9550
212/986-0158 (fax)
ctrinko@trinko.com

LAW OFFICES OF KENNETH A. ELAN
KENNETH A. ELAN
217 Broadway, Suite 603
New York, NY  10007
Telephone:  212/962-1224
212/271-4230 (fax)

*Attorneys for Plaintiff*

<u>CERTIFICATE OF SERVICE</u>

I, Mary K. Blasy, hereby certify that on January 22, 2019, I authorized a true and correct copy of the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such public filing to all counsel registered to receive such notice.



*/s/ Mary K. Blasy*
MARY K. BLASY